---

CASE 11—PETITIONS ORDINARY—APRIL 21.

## Phœnix Insurance Co. vs. Commonwealth.

## Home Insurance Co. vs. Commonwealth.

## J. L. Danforth, Agent for Home Insurance Co., vs. Commonwealth.

### APPEALS FROM FRANKLIN CIRCUIT COURT.

1. Section 4, article 4, chapter 83, Revised Statutes (2 *Stanton*, 246), and the act of February 18, 1864 (*Myers' Supplement*, 410), imposing on agents of insurance companies not chartered by the Legislature of Kentucky, a tax on all premiums received within this State, and a penalty for failing to pay the same, *are held to be constitutional.*

2. The States have the constitutional power and right to discriminate against, and impose upon, corporations chartered by other States, a tax for the privilege of transacting business in such State, though no such burden is imposed upon like corporations chartered by its own Legislature. (*Commonwealth vs. Milton*, 12 *B. Mon.*, 212; *Tatem vs. Wright*, 3 *Zabriskie* (*N. J.*), 444; *Fire Department vs. Noble*, 3 *E. D. Smith* (*N. Y.*), 449; *Slaughter vs. Commonwealth*, 13 *Grattan* (*Va.*), 768.)

Phœnix Insurance Co. vs. Commonwealth.

3. Every power which a corporation, created by the laws of one State, exercises in another, depends for its validity upon the laws of the sovereignty in which it is exercised; and a corporation created in one State can make no valid contract in another, without its sanction, express or implied. (*Bank of Augusta vs. Earle*, 13 *Peters*, 584.)

4. In the silence of any positive rule, affirming, or denying, or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interest. It is not the comity of the courts, but the comity of nations, which is administered and ascertained in the same way, and guided by the same reasoning, by which all other principles of municipal law are ascertained and guided; and when the interest or policy of any State requires it to restrict the rule, it has but to declare its will, and the legal presumption is at an end. (13 *Peters*, 584; *Story on Conflict of Laws*, 37.).

5. To recognize the right of a corporation created by one State, to force its presence and business into the territory of another, is to allow a State to give its own laws an extra territorial operation, and allow its artificial creation to transport its laws, into the sovereignty of a neighbor, over the positive enactments of such neighbor; for its very presence and capacities are by virtue of its charter. (*Commonwealth vs. Milton*, 12 *B. Mon.*, 212.)

6. A corporation, as a legal entity for the purposes of jurisdiction, may have the status of a citizen in the Federal Courts under section 2, article 3, United States Constitution; but this does not make a corporation *a citizen*, for all the purposes and fundamental rights of a citizen, as declared in section 2, article 4, United States Constitution.

7. The Franklin circuit court, as the fiscal court, has jurisdiction under section 492, Civil Code, of all actions in favor of the Commonwealth to recover a debt, whether by penalty or forfeiture or otherwise, due the State, when the Attorney General of the State shall see proper to resort to it.

HUMPHREY MARSHALL and
WILLIAM ATWOOD,                              For Appellants,
CITED—
*Revised Statutes*, 2 *Stanton*, *pp*. 246, 247, 274; *Myers'*
*Sup.*, *p*. 410.
*Session Acts*, 1867, *sec*. 8, *p*. 55.

Phœnix Insurance Co. vs. Commonwealth.

*Angell & Ames on Corporations, 8th ed., secs.* 436, 438, 443, 265.

7 *Am. Law Register,* 500 ; *Duer vs. Small.*

4 *Blatchford's Circuit Court Reports,* 263.

2 *Howard's S. C. Rep.,* 497 ; *Louisville Railroad Co. vs. Litson.*

16 *How.,* 314 ; *Marshall vs. Baltimore and Ohio Railroad Co.*

12 *Wheaton,* 412 ; *United States vs. Amedy.*

3 *Peters,* 36 ; *Thornton vs. Bank of Washington.*

8 *Wheaton,* 464 ; *Society vs. Town of New Haven.*

15 *Johnson,* 359 ; *People vs. Utica Ins. Co.*

1 *Cowen,* 513 ; *Mott vs. Hicks.*

5 *Hill,* 33, 38 ; *State of Indiana vs. Woram.*

4 *Bingham's New Cases,* 669 ; *Boyd vs. Craydon.*

10 *Wendell,* 186 ; *Ontario Bank vs. Bunnell.*

15 *Barbour,* 650 ; *Sherwood vs. Washington R. R. Co.*

3 *Bland's (Md.) Rep.,* 451–2 ; *The Belona Case.*

13 *Peters,* 519 ; *Bank of Augusta vs. Earle.*

14 *Peters,* 129–30 ; *Runyan vs. The Lessee of Costar.*

6 *Gray (Mass.),* 204 ; *Kennebec Co. vs. The Augusta Ins. and Banking Co.*

*Constitution of United States, sec.* 2, *art.* 4.

*Articles of Confederation, sec.* 1, *art.* 4.

*Federalist, No.* 80.

4 *Washington C. C. R.,* 380–81 ; *Curfield vs. Coryell.*

14 *Ala.,* 627 ; *Wiley vs. Palmer.*

11 *Allen (Mass.),* 280–81 ; *Oliver vs. Washington Mills.*

10 *Connecticut,* 343 ; *Crandall vs. State.*

39 *Penny's R.,* 80 ; *Philadelphia Association vs. Wood.*

12 *Louisiana Annual,* 802 ; *State vs. Merchants' Insurance Company.*

5 *Cranch.,* 61 ; *Bank of U. S. vs. Devaux.*

14 *Peters,* 60 ; *Bank of Vicksburg vs. Slocum.*

Phœnix Insurance Co. vs. Commonwealth.

*Daniel Webster's Opinions*, 3 ; *E. D. Smith's N. Y.
R., pp.* 478, 483, 484, 485 ; *of Geo. Wood, pp.* 483–4;
*of Chief Justice Jones*, 485–6—*being on an Appendix
to the case of Fire Department vs. Wright.*

3 *E. D. Smith's N. Y. Reports.*

4 *Wallace*, 555 ; *Hine vs. Trevor.*

4 *Wallace*, 411 ; *The Moses Taylor.*

*Civil Code, secs.* 94, 101, 105.

*Revised Statutes*, 1 *Stant., sec.* 3, *p.* 323.

*Criminal Code, sec.* 8.

7 *B. Mon.*, 248 ; 8 *Dana*, 159–60.

12 *B. Mon.*, 212, 230.

3 *Zab. N. J.*, 429 ; *Tatem vs. Wright.*

13 *Grattan*, 767 ; *Slaughter vs. Commonwealth.*

3 *Dallas*, 382 ; *Bingham vs. Cabot.*

1 *Wheaton*, 91 ; 14 *Howard*, 100.

15 *Howard*, 240 ; *Northern Ind. Railroad vs. Michigan
Central.*

20 *Howard*, 202 ; *Covington Draw Bridge Company vs.
Shepherd.*

1 *Black's S. C. Rep.*, 286, 297 ; *Ohio and Mississippi
Railroad Co. vs. Wheeler.*

*Vattell's Laws of Nations, p.* 49.

*Constitution United States, 4th amendment.*

*Cowper*, 79 ; 12 *Modern*, 669 ; 4 *Comstock*, 425.

JOHN RODMAN, Attorney General,      For Appellee,
CITED—

*Revised Statutes, secs.* 4, 5, *art.* 4, *chap.* 83.

*Myers' Supplement, p.* 410.

*Constitution United States, sec.* 2, *art.* 4.

13 *Peters*, 521 ; *Bank of Augusta vs. Earle.*

5 *Cranch.*, 57, 61 ; *Bank U. S. vs. Devaux et al.*

13 *Grattan's Va. Rep.*, 767 ; *Slaughter vs. Common-
wealth.*

3 *Zabriskie* (*N. J.*), 440; *Tatem vs. Wright.*

12 *B. Mon.*, 212; *Commonwealth vs. Milton.*

2 *Howard*, 497; *Louisville Railroad Co. vs. Letson.*

8 *Howard*, 73; *Nathan vs. State of Louisiana.*

4 *Wheaton*, 428; *McCulloch vs. State of Maryland.*

*Civil Code, section* 492.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

By *section* 4, *article* 4, *chapter* 83, 2 *Stanton's Revised Statutes*, 246, the tax on agents of any insurance company not chartered by the Legislature of Kentucky was fixed at two and one half per cent. on all premiums received within this State, which, by a subsequent act of February 18, 1864 (*Myers' Supplement*, 410), was raised to five per cent. on such premiums. By section 5 of said article it was made the duty of agents to report, on first Mondays in May and November, to the county clerk where he was transacting business, under oath, all premiums received or agreed to be received for the past six months, and pay said tax; and for any default, a forfeiture of one thousand dollars was denounced, and the same penalty was also denounced against the principal, to be recovered by "proper remedies in law or equity."

These appellants being foreign insurance companies or agents therefor, doing business in this State, and failing to comply with said statutes, several suits were brought by the State in its fiscal court, being the Franklin circuit court, to recover the penalties under said statutes; and having recovered several judgments, the appellants seek a reversal.

Two main questions are involved—

1. The constitutional validity of said statutes.

2. The jurisdiction of the fiscal court.

It is insisted, inasmuch as this is a higher tax than is imposed on our insurance companies, that said enactments conflict with the first clause of section 2, article 4, United States Constitution, declaring that "*the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States;*" and in conflict with the decisions of the Supreme Court of the United States in *Louisville and Charleston Railroad Company vs. Letson*, 2 *How.*, 497; *Rundle vs. Delaware and Raritan Canal*, 14 *How.*, 100; *Northern Indiana Railroad Company vs. Michigan Central*, 15 *How.*, 240; *Marshall vs. Baltimore and Ohio Railroad Company*, 16 *How.*, 178; *Covington Draw Bridge Company vs. Shepherd*, 20 *How.*, 202; *Ohio and Mississippi Railroad Company vs. Wheeler*, 1 *Black*, 297.

All these cases, however, were determinations as to the jurisdiction of the Federal Courts and expoundings of section 2, article 3, United States Constitution, as to jurisdiction in suits "*between citizens of different States*," and the judiciary acts conferring jurisdiction in suits between "citizens of the State where the suit is brought and a citizen of another State."

Previous to the case of *Louisville and Charleston Railroad Company vs. Letson*, the Supreme Court, in several cases, where a corporation of another State than the one where the suit was brought, was a party, had gone behind the act of incorporation to ascertain whether any of the incorporators were residents of the State in which the suit was brought, and if found to be so, refused to the Federal Courts jurisdiction; but these cases were decided upon the authority of an early and illy-considered case, and presented many absurdities and hardships, and were not satisfactory to either the court or profession in their theory or results. Finally Letson, a citizen of New York, sued the Louisville and Charleston Railroad Company in

the Federal Court of the South Carolina district, averring that he was such citizen of another State, and that the defendant was an incorporated company, and inhabitant and citizen, of South Carolina. To which it responded, that two of its incorporators were citizens of North Carolina; therefore, as the plaintiff was a citizen of one State, New York, and the defendant not a citizen of *another*, but of *other States*, to-wit: South and North Carolina, that the Federal Courts had no jurisdiction; to which a demurrer was sustained, and it went up on this isolated question.

This being an entirely new presentation of the constitutional declaration of judicial power and the congressional enactments conferring jurisdiction, it afforded the court an opportunity to review its former decisions, and place the jurisdiction of the courts upon a more harmonious, consistent, and rational theory, comporting more with the genius of the Federal Constitution and legislative enactments. It was then determined that a corporation, deriving its powers from a State Legislature, having its location and business in such State, was an artificial person, a legal entity, a statutory being, with capacities of suing and being sued, contracting and being contracted with, purchasing and holding and selling property, with a name and a location, and a citizen, within the meaning of the Constitution, declaring judicial power, and the acts of Congress conferring jurisdiction on the Federal Courts, so far as to give it a status, as a citizen, in the Federal Courts for the adjustment of rights, either for or against it, independent of the personal character or location of its corporators.

That such artificial being is a *single identity*, with such rights and responsibilities, alone, as are conferred by its charter, and *a single inhabitant*, and, *to a qualified extent, a citizen* of the State by whose authority and within whose

territory it exists, independent of, or without reference to, its corporators, we think now beyond question ; and hence within the meaning of said constitutional provision and congressional enactments, declaring and conferring juris- diction upon the United States Courts. As it has the capacity of suing and being sued, why shall it not have the privilege of all the forums, either State or Federal, secured to all citizens, to prosecute and defend its rights, without regard to the number, location, or character of its corporators? But does this make it, a citizen, for all the broad and numerous purposes, and to protect the various, numerous, and fundamental rights of the citizen, as declared in said section 2, article 4, United States Constitution?

How could a corporation of another State, which by its charter was only invested with limited and specific powers, exercise in this State " all the privileges and immunities " of natural persons, citizens of either that or any other, or of this State? This clause of the Constitu- tion, as was said by this court in *Commonwealth vs. Milton* (12 *B. Mon.*, 212), was adopted to secure the *natural, com- mon,* and *fundamental* rights of the citizen, such as per- tain to all free-born, whether male or female, young or old, rich or poor. With the securing these natural and common rights by the government comes correlative du- ties by the citizen to bear its burdens, defend its rights, and perform such duties as may legally be enjoined, many of which an artificial being, a mere legal entity, could neither bear, observe, nor perform. It, in fact, is a being, unknown to the Constitution, and only to be called into being and invested with a legal existence and with legal capacities by the fiat of some legislative body ; and so far, and only so far, as it may have legal existence and powers and rights, as manifested by its special act of

incorporation, can it in any, even the most limited sense, be regarded as an inhabitant or citizen.

In the case of the *Bank of Augusta vs. Earle* (13 *Peters*, 484), Chief Justice Taney, in delivering the opinion of the court, with great power and logic demonstrated that an act of incorporation was a high exercise of sovereignty, and could be enforced extra-territorially, or within the sovereignty of another State, only by the comity, either of its statutory laws, or as part of its common law, as administered by the judiciary; and that it was perfectly competent for one sovereignty or State to prohibit, by positive law, the corporations of another sovereignty, or State, from doing business within its territory; but that, in the absence of any positive law, the comity of nations would be presumed to be part of the laws of each State of the American Union towards each other; and that a corporation, with power to transact business and sue extra-territorially, would be held as having done a legal and legitimate business within another State, in the absence of any positive law forbidding it by such State.

Said the court: "It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by the force of law; and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty; but although it must live and have its being in that State only, yet it does not follow that its existence there will not be recognized in other places; and its residence in one State, creates no insuperable objection to its powers of contracting in another. It is, indeed, a mere artificial being, invisible and intangible; yet it is a person, for certain purposes, in contemplation of law. * *

Every power, however, of which we are speaking, which a corporation exercises in another State, *depends for its validity upon the laws, of the sovereignty, in which it is exercised, and a corporation can make no valid contract without their sanction, express or implied.*"

The court then proceeds to adopt the rule recognized by foreign nations, and as laid down in *Story on Conflict of Laws*, 37, that, " in the silence of any positive rule, affirming or denying, or restraining the operation of foreign laws, courts of justice presume the tacit adoption of them by their own government, unless they are *repugnant to its policy*, or prejudicial to its interest. It is not the comity of the courts, but the comity of nations, which is administered and ascertained in the same way, and guided by the same reasoning, by which all other principles of municipal law are ascertained and guided." * * "*And when the interest or policy of any State, requires it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end.*"

And although the distinguished Chief Justice who rendered this decision, rendered some of the later decisions as to the rule of citizenship to be applied to corporations in ascertaining the jurisdiction of the Federal Courts, yet he, nor any other Justice rendering said decisions, ever attempted to modify or overrule the principles so adjudicated in this case.

The reason is palpable. In this Bank of Augusta case the court was expounding the first paragraph of section 1, article 4, United States Constitution; in the other cases they were expounding section 2, article 3, same Constitution; the one being declared for the protection of the rights of the citizen, the other to define the judicial power and jurisdiction of the Federal Courts—two subjects wholly unlike and distinct. To transport the prin-

ciples governing the one to the control of the other, is to produce the singular anomaly and inconsistency of denying to the courts the right to look beyond the charter to ascertain its individual corporators when it seeks a Federal forum, and as its interest may demand; and then, in the adjudication of its rights, to demand that the court shall look beyond its act of incorporation and ascertain its individual members, in order to protect their rights; thus, in the same suit, before the same forum, having a corporation denying the power of the court to go behind its charter to ascertain its members, and then demanding that it shall do so to ascertain them and their individual right.

But, as said by this court in *Commonwealth vs. Milton*, to recognize the right of a corporation created by one State to force its presence and business into the territory of another, is to allow a State to give its own laws an extra territorial operation, and allow its artificial creation to transport its laws into the sovereignty of a neighbor, over the positive enactments of such neighbor, for its very presence, powers, and capacities are by virtue of its charter. It is easy to imagine what discords, heart-burnings, and disasters might follow; and instead of producing that congruous harmony so desirable in a union of free States, and so eloquently alluded to by appellants' counsel, its opposite might reasonably be anticipated.

The policy, interest, and desires of the weaker States might be overwhelmed by their more potent neighbors. A favorite policy in Kentucky and some other States against tying up lands in perpetuity, might be revolutionized by the powers and capacities of the corporations of neighboring States, to purchase and perpetually hold real estate; and this is but one of numerous phases in which her cherished policy on various subjects might be

overcome by the corporations of her neighbors, if they are to be regarded as citizens, and within the protection of section 2, article 4, Constitution United States, and thereby beyond the discriminating control of the State Legislature.

It will at once be perceived, that if the State can no more discriminate against the corporations of a neighboring State, than against her natural citizens and inhabitants, then the State can no more exclude them from business or the holding of her lands, or other privileges secured to her citizens.   Besides, another singular inconsistency would flow from such a determination on our part; for these are corporations of the State of New York, and her Legislature has discriminated against the corporations of other States, and her courts uphold her laws as constitutional; and whilst we are asked by insurance companies of New York, to admit them to do business on the same footing of our own, that State refuses to let our insurance companies do business there, on the same footing with their own.   But this class of discriminating statutes have been before the courts of last resort in several of our sister States, and have been universally upheld by well-considered and exhaustive adjudications.   By the State of New. Jersey, in *Tatem vs. Wright* (3 *Zabriskie's R.*, 444); by the State of New York in *Fire Department vs. Noble* (3 *E. D. Smith's N. Y. Rep.*, 449, *Common Pleas*); by the State of Virginia in *Slaughter vs. Commonwealth* (13 *Grattan*, 768); and by this court heretofore in *Commonwealth vs. Milton*, in a well-considered and lucid opinion.   But we have again considered the question, through respect for the opinions of the learned counsel of appellants, and inasmuch as there had been but one previous opinion of this court, and because of the importance of the question, having herein

only made some additional suggestions, without wandering over precisely the same beaten track.

As to the question of jurisdiction in the Franklin circuit court, if this depended either on article 15, chapter 27, 1 Stanton's Revised Statutes, 323, or sections 94, 101, or 102, Civil Code, we should be inclined to disallow it; but section 492, Civil Code, provides that "where the debt due the Commonwealth is uncertain in amount, or depends on the settlement of a complicated account or transaction, or *in any other case* in which *the Attorney General thinks proper*, he may bring an action therefor by ordinary or equitable proceedings in the Franklin circuit court.

This section unquestionably confers jurisdiction on the fiscal court, in all cases, to recover a debt, whether by penalty or forfeiture, or otherwise, due the State, when the Attorney General shall see proper to resort to it.

The amendment of 1864, increasing the per centum to be paid, made no other modification in the original act, which held the constituent, as well as the agent, amenable for its violation in doing business contrary thereto.

Judgments affirmed.