CASE 65—ACTION CLAIMING AN ATTACHED FUND—NOV. 28.

# Zacher & Others v. Fidelity Trust & S. V. Co. &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFFS APPEAL. AFFIRMED.

RECEIVERS—APPOINTMENT IN ANOTHER STATE—PRIORITY OF RESIDENT ATTACHING CREDITOR.

Held:  1. Where, in a proceeding by a creditor and stockholder of an insolvent corporation, a receiver was appointed in Connecticut under a statute of that State providing for winding up insolvent corporations, and a deed of assignment was executed to the receiver in aid of the receivership, the proceeding being *in invitum*, did not have the effect of a voluntary assignment for the benefit of creditors; and as it is operative, therefore, as to property in Kentucky, only so far as the courts of that State choose to respect it, a subsequent attaching creditor in this State will be given priority.

2. The creditors of a foreign corporation are not bound to take notice of the laws of the State in which the corporation was organized, relating to the dissolution of corporations, and are not bound by the appointment of a receiver under those laws.

ALEX P. HUMPHREY AND WM. MARSHALL BULLITT, ATTORNEYS FOR APPELLANT, EDMUND ZACHER.

This is an appeal from a judgment of the Jefferson Circuit Court dismissing the petition of Edmund Zacher, assignee, &c. The controversy is over a fund of $4,075.47, which is claimed on the one hand by Edmund Zacher as assignee of the Newport News & Mississippi Valley Co., and on the other hand by the Fidelity Trust Co., attaching creditor, the attachment being subsequent to the assignment.

On behalf of Zacher we claim that the Connecticut proceedings hereafter to be noticed *were substantially the exact equivalent of a voluntary assignment for the benefit of creditors*, and that such assignment should be respected by the courts in Kentucky as prior in right to a subsequent attaching creditor.

Zacher and others v. Fidelity Trust & S. V. Co., &c.

### AUTHORITIES.

Security Trust Co. v. Dodd, 173 U. S., 629; Coflin v. Kelling, 83 Ky., 649, 652; Peach Orchard Co. v. Woodward, 20 Ky. Law Rep., 1613; Rubel v. Lou. Banking Co., 10 Ky. Law Rep., 1021; Thompson on Corp., sec. 7338.

### I.

The Connecticut proceedings, vesting title in Zacher, were purely voluntary; were not made under any State insolvency law; and were the substantial equivalent of the ordinary deed of assignment for the benefit of creditors, and should therefore be recognized and enforced in Kentucky. Conn. Stats., sec. 1942; Am. Nat. Bank v. Nat. Benefit, &c. Co., 70 F. R., 420; Gilman v. Ketcham, 84 Wis., 60; First Nat. Bank v. Walker, 61 Conn., 154; Parker v. Stoughton, 64 N. W., 751.

### II.

All creditors of the N. N. & M. V. Company are bound by the statute of Connecticut providing a method for winding up the affairs of a Connecticut corporation, and distributing its assets among creditors. Relfe v. Rundle, 103 U. S., 222; Bockover v. Association, 77 Va., 85; Rundle v. Life Association, 10 F. R., 720; Davis v. Life Association, 11 F. R., 782; Taylor v. Life Association, 13 F. R., 492; Fry v. Charter Oak Co., 31 F. R., 197; Parsons v. Charter Oak Co., 31 F. R., 305; Canada Southern Ry. Co. v. Gebhart, 109 U. S., 527.

### III.

The dismissal of Zacher's petition was a failure to give in Kentucky full faith and credit to the public acts, records, and judicial proceedings of the State of Connecticut.

WALLACE McDONALD and HARRIS & BARR, ATTORNEYS FOR APPELLEE.

The case presents a controversy between the receiver of a "tramp corporation" appointed by the court of the State of its legal home, Connecticut, on the one side, and several citizens of Kentucky, who are attaching creditors of said corporation, on the other side, and involves the right to a fund of $4,075.47, which belonged to the corporation and was attached by said creditors.

### THE LAW OF THE CASE.

1. The proceedings in Connecticut, whereby the plaintiff is appointed receiver of the N. N. & M. V. Co., are not sufficient to vest the title in him so as to deprive these Kentucky creditors of

Zacher and others v. Fidelity Trust & S. V. Co., &c.

their right to subject its property by attachment for the following reasons:

(a) It is a general rule that a receiver's authority extends only so far as the jurisdiction of the court which appointed him extends and this authority will not be recognized in a foreign jurisdiction.

(b) This rule is not varied in this case by reason of the fact that the receiver is appointed by virtue of statutory provisions which might be considered as part of the organization of the corporation. Relfe v. Rundle, 103 U. S., 222.

(c) He is not aided by any provisions of the laws of Connecticut which might allow the corporation to withdraw its assets from the jurisdiction of Kentucky courts, or by any other provisions of its laws which are contrary to the settled policy of the laws of this State.

2. The alleged deed of assignment, is insufficient to vest the receiver with title to the fund in controversy so as to defeat the rights of other parties. Because:

(a) The assignment must be treated as a fraudulent conveyance since it was not executed in contemplation of insolvency nor for the benefit of creditors, but with some other intent than that of providing for its creditors.

(b) The assignment being executed merely in aid of the proceedings in Connecticut, and the assignee being in effect merely an officer of the court of Connecticut, it has no extra territorial effect, so as to defeat the attaching Kentucky creditors of their rights.

(c) The deed is farther insufficient because of defects in its execution and subsequent proceedings thereunder.

3. There is no proof of its delivery to the assignee before the attachments of defendants.

4. It has not been recorded in the Court of Probate as required by Connecticut Statutes.

5. Zacher has never qualified as assignee in Connecticut, nor conplied with any of the laws of that State regulating the conduct of assignees in such cases.

6. He will not be permitted under the Statutes of Kentucky to act as such in this State without executing bond.

7. Not having been executed in pursuance of the vote of the board of directors authorizing it, it was inoperative, and any subsequent ratification by the said board was not sufficient to defeat the rights of intervening creditors.

(d) Being in effect merely a voluntary alienation of personalty, unaccompanied by the actual possession, it was not effectual to defeat the rights of creditors attaching the property until the assignment was recorded in Kentucky. Thompson on

Corp., secs. 7334, 7338, 7886, 7895, 7896; Booth v. Clark, 17 How., U. S., 322, 338; Brantley on Per. Prop., sec. 348; Burrell on Assignments, sec. 303; Am. & Eng. Ency., vol. 20, p. 67; Coflin v. Kelling, 83 Ky., 649; Johnson v. Parker, 4 Bush., 149, 154; Paine v. Lester, 44 Conn., 196; Upton v. Hubbard, 28 Conn., 274; Relfe v. Rundle, 103 U. S., 222; Fry v. Charter Oak Life Ins. Co., 31 Fed., 197; Weingartner v. Charter Oak Co., 32 Fed., 315; Rundel v. Life Assn., 10 Fed., 720; Davis v. Life Assn., 11 Fed., 781; Life Assn. of America v. Fossett, 102 Ill., 315; Canada Southern Ry. Co. v. Gebbard, 109 U. S., 527; Atterberry v. Knox, 4 B. M., 90; Land Grant Co. v. Coffey Co., 6 Kan., 245; Com. v. Milton, &c., 12 B. M., 212; Simrall & Co. v. City of Covington, 90 Ky., 444; Phoenix Ins. Co. v. Com., 5 Bush., 68; Ky. Stats., sec. 1906; Burrell on Assignments, secs. 122, 239, 252, 328 (95 Ill., 298); German Ins. Co. Nunes, 80 Ky., 334; Turley v. Alpin, 5 Ky. Law Rep., 770; Bank of Com. v. Payne Viley & Co., 86 Ky., 446; Brantley on Per. Prop., sec. 343; McClure's Assignee v. Campbell, 71 Wis., 350; Silver v. Edwards, 9 Ky. Law Rep., 948; Marston v. Coburn, 17 Mass., 454; Ball v. Farmers Bank of Ky., 11 Bush, 34; Am. & Eng. Ency., vol. 5, p. 445; Coflin v. Kelling, 83 Ky., 849; Rubel v. Louisville Banking Co., 10 Ky. Law Rep., 1021; Norton v. Ala. Nat. Bank, 1480, (Ala.) 870, and cases cited therein; Wood v. McClain, 7 Ala., 800; Cook v. Tullis, 18 Wall., 332; Am. & Eng. Ency., vol. 1, p. 436.

ADDITIONAL BRIEF BY W. O. HARRIS.

## AUTHORITIES.

### I.

Right of foreign receivers to sue: Reynolds v. Alden, 136 U. S., 354; Sands v. Greeley, 88 Fed. Rep., 130; High on Receivers, sec. 239; Smith on Receivers, sec. 167; Thompson on Corporations, sec. 7338.

### II.

Foreign laws must be pleaded.   Roots v. Merriwether, 8 Bush., 398.

### III.

The deed ratifying the receivership does not improve his title.   Catlin v. Wilcox, 123 Ind., 477; Catlin v. Wilcox, 18 Am. Stat., 338; Iddings v. Bruen, 4 Sandf. Chy., 252; High on Receivers, sec. 443.

IV.

An intent to cheat, hinder or delay creditors makes an assignment void.   German Bank v. Nanez, 80 Ky., 334; Bank v. Payne, 88 Ky., 446.

V.

A foreign corporation does not bring its laws with it into this State. Commonwealth v. Milton, 12 B. M., 212; Kentucky Constitution, sec. 202.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

This is a controversy over the sum of $4,075.47, which is claimed by appellant Edmund Zacher as assignee and receiver of the Newport News & Mississippi Valley Company, by appointment of the superior court of the county of New Haven, in the State of Connecticut, and also by the Fidelity Trust and Safety Vault Company, as assignee of the McDonald Brick Company, by virtue of an attachment levied thereon subsequent in time to appellant's appointment as receiver by the Connecticut court.   A brief statement of the facts out of which the controversy grew is essential to the understanding of the legal questions raised upon the appeal:   The Newport News & Mississippi Valley Company was chartered by the Legislature of Connecticut in March, 1884, and, by the fourth section of the articles of incorporation, was empowered to acquire, equip, construct, and operate railroads, railroad bridges, steamboat lines, and kindred enterprises in any State or territory in the United States, or in any foreign country, except within the State of Connecticut.   By virtue of this charter, in January, 1886, it leased the Chesapeake, Ohio & Southwestern Railroad for a term of fifty years; and it operated the road under the lease until July 23d, when its lease was canceled by common consent, and the operation of the road resumed by the lessor company until De-

cember 22, 1893, when it was put into the hands of a receiver by a judgment of the United States Circuit Court for the State of Kentucky on a bill by C. P. Huntington. During the period of its lease of the railroad line, appellant became liable to the McDonald Brick Company by virtue of the breach of a contract made with it. The McDonald Brick Company made a general deed of assignment for the benefit of its creditors to the Fidelity Trust & Safety Vault Company, both corporations existing under and by virtue of the laws of the State of Kentucky. After the assignment of the brick company, appellee instituted suit against the appellant company in the courts of this State, and recovered judgment thereon for $20,000. After the surrender by the Newport News & Mississippi Valley Company of its lease of the Chesapeake, Ohio & Southwestern Railroad, it, on the 27th day of November, 1893, united with C. P. Huntington, as joint grantor, in conveying to the Illinois Central Railroad a large amount of property, consisting of stocks, real estate, bonds, etc., realizing as its part of the sale $900,000, which was turned over to the treasurer of the company. The whole of this money, and something approximating half a million more dollars, which was in the hands of appellant company, were thereafter turned over to Mr. Huntington in payment of divers items of alleged indebtedness due to him by appellant company, leaving the treasury of the company empty. After the payment of this money to Mr. Huntington, all of the remaining assets of appellant company, consisting of side tracks, switches, etc., were conveyed to John Echols, third vice president of the company, Holmes Cummings, their general attorney, and others, to protect them against any loss which they might sustain by reason of certain bonds which they had signed as security for the

company. On the same day (March 16, 1894) a meeting of the stockholders was held, at which only two were present in person; the balance of the stock being represented by written proxies. At this meeting it was unanimously "voted that the affairs of the N. N. & M. V. Co. be wound up." And four days afterwards, on the 20th day of March, 1894, C. P. Huntington instituted suit in the superior court for the county of New Haven and the State of Connecticut, in which he prayed, for reasons therein alleged, for a decree winding up the affairs of the Newport News & Mississippi Valley Company, and for the appointment of a receiver to take charge of the assets of the corporation, according to the provisions of the statute; and pursuant to this application appellant Zacher was on the same day appointed temporary receiver of the liquidating company, which appointment was made permanent on April 13th thereafter, and on the 14th of April, 1894, F. H. Davis, as president of the Newport News & Mississippi Valley Company, executed to Zacher, as receiver, what purports to be a general deed of assignment of all the property belonging to the Newport News & Mississippi Valley Company. This deed was subsequently ratified by the directors of the company on the 14th of May, 1894, and delivered to Zacher as receiver. On the 15th day of May, 1894, the fund in controversy here was attached by the Fidelity Trust & Safety Vault Company, assignee of the McDonald Erick Company, by serving an attachment upon the garnishee. And thereafter the appellant Edmund Zacher instituted this suit, and claimed the fund in controversy by virtue of his appointment as receiver by the Connecticut court, and under the deed ratifying his appointment by the directors of appellant company. The claim was resisted by appellee on the ground that the appointment

of Zacher as receiver by the Connecticut court was not in the nature of a voluntary assignment, and did not vest him with the title to the assets of the corporation; that it was in effect a proceeding *in invitum*, and that the independent deed of assignment executed to him by the president of the corporation pursuant to the resolution of the stockholders was not, and was not intended to be, an independent, voluntary assignment for the benefit of the creditors, but was merely executed in aid of the receivership; that it was never recorded in Connecticut, and that the assignee named therein never qualified or gave bond thereunder; and that he acquired no additional power by virtue thereof, independent of that which came from his appointment as receiver. The court below dismissed the petition of appellant, and adjudged the fund to the McDonald Brick Company's assignee, and from this judgment this appeal is taken.

The appeal raises the question whether the receiver of an insolvent Connecticut corporation can maintain an action in the courts of Kentucky to recover money which resident creditors of the incorporation have attached. The statute of Connecticut (General Statutes, 1888), under which appellant was appointed reads as follows: "Section 1942. The superior court in the county in which any corporation, organized under the laws of this State, has its principal place of business, may, as a court of equity, on the application of any of its stockholders, wind up its affairs and dissolve it, if said court shall find that said corporation has voted to wind up its affairs, or abandon the business for which it was organized, and has thereafter neglected within a reasonable time or in the proper manner to wind up its affairs and distribute its effects among the stockholders; and for this purpose may, if it deem it

necessary, appoint one or more of the receivers of said cor-
poration, and limit a time for its creditors to present their
claims to such receivers, and direct public attention there-
of to be given; and all claims not presented within said
time shall be barred.  Said receivers shall allow all just
claims against the corporation, and collect its debts, sell
its property, and convert the same into money, and re-
port their doings to said court as it may direct.  Said
court may on complaint of any person aggrieved by such
doings, grant such relief as the case may require;  and it may
make such orders as to the doings of the receivers, their
compensation and other expenses, and as to the payment
of the debts and distribution of the effects of said cor-
poration as may be just and conformable to law."   The
rule as to the effect of a voluntary common law assignment
for the benefit of the creditors, made in another State upon
personal property located in this State, has been the sub-
ject of frequent discussion by this court.   It is a settled
rule that such an assignment will pass the title to person-
al property in this State, as against a subsequent resi-
dent attaching creditor, if the assignment be such as would
be held good and enforced if made in this State, and is in
harmony with the policy of this State with reference to
the rights of creditors residing herein.   See Coflin v. Kell-
ing, 83 Ky., 649; Coal Co. v. Woodward (Ky. App.) 49 S.
W., 793; Rubel v. Banking Co., 10 Ky. Law Rep., 1021.
But the rule as to receivers who hold their appointment
by virtue of a judgment of a court of another State and
as to statutory assignments is somewhat different.   The
prevailing doctrine is that the receivership operates only
upon the property within the territory of the State, and
that with respect to the property in other States it is given

only such effect as the laws of such States permit, and that in general it must give way to the claims of creditors pursuing their remedies under the laws of the State where the property is actually situated. See Trust Co. v. Dodd, 173 U. S., 629, (19 Sup. Ct.), (545, 43 L. Ed., 838). Thompson, in his work on Corporations (section 7334), says: "A receiver has no extrajudicial power of official action. Hence, it follows that, outside of the jurisdiction which appoints him, a receiver is not ordinarily entitled to maintain suits, except by comity, especially when to do so will operate to the prejudice of any rights secured by the local law to their own citizens." And in section 7334, he says: "The rule now universally admitted and acted upon is that assignments of the property of an insolvent, made *in invitum* by a court in a foreign jurisdiction, for the purpose of judicial administration, to a receiver, assignee, trustee, or other functionary, by whatever name called, are not permitted so to operate as to deprive the domestic creditors of any remedy given by the domestic law." And this is substantially the rule as laid down by High, Rec., section 339; Smith, Rec. p. 107. It therefore only remains for us to determine whether the transfer made to appellant was equivalent to a common law or voluntary assignment for the benefit of all of the creditors, or was it in the nature of a proceeding *in invitum?*

It is the contention of appellant that he is nothing but a voluntary assignee, and that the Connecticut proceeding under which he was appointed is simply a statutory provision for the voluntary assignment of insolvent corporations for the benefit of all of their creditors equally, while it is the contention of appellee that the whole proceeding in Connecticut is a scheme to prefer certain creditors of the corporation living outside of this State, to the preju-

dice of the local creditors. To support this contention, they point to the fact that nearly all of the assets of the company before the assignment were turned over to the large stockholders and officers to pay and protect liabilities due them, to the prejudice of local creditors, and that no steps have been taken by appellant, as receiver, during all of the years that have intervened since his appointment looking to the recovery of this property for the benefit of all of the creditors. Appellant himself has not testified, and the testimony of the president and secretary of the company and of the attorney of appellant, who was also the attorney of the defunct corporation, most certainly discloses the most extraordinary disregard of the rights of the creditors of this corporation living in the State of Kentucky; and we think that the proceedings under which appellant was appointed to take charge of the assets of the liquidating corporation were clearly *in invitum*, both in their form and character. The relief was sought by a stockholder and creditor. The corporation was made a defendant. The judgment, upon its face, did not purport to be a consent judgment, and this court will not inquire whether the corporation itself instigated the granting of the relief sought by the creditor who instituted the suit. There was in fact no voluntary or common-law assignment, for the benefit of all of the creditors equally, made or authorized by the corporation, such as this court has held to be binding upon creditors resident in this State. On the contrary, we think the proceeding in Connecticut was a statutory one for winding up the affairs of an insolvent corporation under the laws of that State, and is operative as to property in Kentucky only so far as the courts in this State choose to respect it, and that so far as appellant, as receiver or assignee, took title

to such property, he took it subservient to appellee's at-
tachment.

"It is also contended for appellant that every person
dealing with the Newport News & Mississippi Valley Com-
pany was charged with notice of such general laws of the
State of Connecticut as provide for the dissolution of
corporations of that State, and that when the corporation
was dissolved by reason of such laws, and the title to its
assets vested in appellant, as receiver, thereunder, every
creditor in Kentucky was bound by such appointment of
the receiver, and can not now claim adversely, and that
the refusal of the trial court to recognize the title of
Zacher was a denial of full faith and credit to the judicial
proceedings of the State of Connecticut, and therefore a
violation of section 1, article 4, of the Constitution of the
United States." And to support this contention we are
referred to Relfe v. Rundle, 103 U. S., 222, 225, 226; 26 L.
Ed., 337, and to other decisions of the Federal courts which
recognize and follow the rule of law declared in that case.
Relfe v. Rundle presented a contest between the superin-
tendent of the insurance department of the State Govern-
ment of Missouri, in winding up an insurance company
known as the Life Association of America, under section
6043 of the Revised Statutes of Missouri, and one of its
stockholders, who resided in the State of Louisiana, on
the other side, in the courts of Louisiana. "Relfe, the in-
surance commissioner, did not appear in the Louisiana
court under and by virtue of an appointment from a court,
but as the statutory successor of a corporation which the
court in a legal way dissolved and put out of existence.
He was in fact the corporation for all the purposes of
winding up its affairs." And the Supreme Court of the
United States held, upon appeal from the judgment of the

Louisiana court, that every policyholder in Louisiana was charged with notice that by charter of the defunct corporation, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the State, and he was charged with the duty of winding up its affairs; that when appellees contracted with the Missouri corporation they impliedly agreed that, if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the State should represent the company in all suits instituted by them affecting the winding up of its affairs. Relfe, the insurance commissioner, therefore, became the successor of the corporation in the litigation which appellee had instituted in Louisiana. It appears to us that the case at bar materially differs from that of Relfe v. Rundle and the other cases cited in support of this contention. In all of those cases the litigation was between the corporation and certain nonresident stockholders, and the court, in effect, held that the stockholders and the policyholders were bound by the Constitution and articles of incorporation of the association. In the case at bar appellees were in no sense members of the corporation, and were not, therefore, bound to take notice of the provisions of all of the laws of Connecticut which might affect the conduct or organization of the company. The courts of this State have uniformly held that foreign corporations doing business in this State are subject to our laws, and do not import any of the laws of their domicile which are contrary to the laws or policy of this State. This question was most thoroughly considered by this court in the opinion by Judge Marshall in the case of Commonwealth v. Milton, 12 B. Mon., 212, in which he used this striking and significant language: "As corporations

concentrating capital and skill are more powerful than individuals who compose them, and as corporations may be used for almost every purpose connected with the business and interests of society, the absolute right of a corporation of one State to do in every other State all corporate acts within the power granted by its charter is, in effect, an absolute and almost unlimited power in one or each State to legislate extraterritorially, by conferring rights within another State, or by conferring upon instruments of its own creation the power of acquiring them there. The apparent reciprocity of the power would prove to be a delusion. The competition for extraterritorial advantages would but aggrandize the stronger to the disparagement of the weaker States. Resistance and retaliation would lead to conflict and confusion, and the weaker States must either submit to have their policy controlled, their business monopolized, and their domestic institutions reduced to insignificance, or the peace and harmony of the States would be broken up, and perhaps the Union itself destroyed. Without looking to any extreme consequences, we say that the grant of extraterritorial power to the corporation is wholly beyond the objects of the Constitution, and inconsistent with its charter and provisions." To the same effect is the case of Simrall v. City of Covington, 90 Ky., 444; (14 S. W., 369); (9. L. R. A., 556); Phoenix Ins. Co. v. Commonwealth, 5 Bush, 68. Section 202 of our Constitution prohibits foreign from doing business in this State on more favorable terms than domestic corporations. We therefore conclude that the principle of law contended for does not apply to the case at bar. For the reasons indicated, the judgment is affirmed.

Judge Hobson not sitting.