## Speed *versus* May.

| 17 | 91 |
|----|-----|
| 133 | 112 |

17      91
19 SC ¹269

1. The legal *situs* of *personal* property follows the domicile of the owner, and the law of the actual *situs* protects the claims of creditors domiciled there, only against transfers *by operation of law ;* Therefore, a *voluntary* assignment made by the owner in Maryland who resided there, passed the property in a claim in Pennsylvania to the assignee, and his right was not divested by a foreign attachment issued in Pennsylvania subsequent to the assignment.

2. The *lex fori* controls the remedy as respects *personal* property, but the law of the domicile regulates its transfer : It was therefore *held* that a *voluntary* assignment in Maryland of personal property was valid as to a claim in Pennsylvania included within its terms, though it was not recorded in this State, in pursuance of the fifth section of the Act of 24th March, 1818, and though the assignees did not act as required by our Act of 14th June, 1836, relating to assignments for the benefit of creditors.

ERROR to the Common Pleas of *Union county.*

In this case, Joseph J. Speed, assignee of Lewis H. Giese and James H. Giese, lately doing business in the name of Giese & Son, endorsees of Geo. Gundrum, were plaintiffs, and William J. May and Reuben Klose, late partners, trading under the firm of May & Klose, were defendants.

The parties to this case, at May Term, 1851, agreed to submit

[Speed *v.* May.]

to the court the following as a case stated, in the nature of a special verdict, with leave to either party to remove the judgment of the court thereon to the Supreme Court by writ of error.

The case presented the question, whether the voluntary assignment for the benefit of creditors, to the plaintiff, made in the state of Maryland, by residents there, entitle the plaintiff to a chose in action locally situate in the state of Pennsylvania against a foreign attachment, issued at the suit of the defendants, who are citizens of Pennsylvania, after the execution and delivery of said assignment.

Case stated.—" On the 28th day of September, 1848, William Boyer and Jacob Zimmerman, as partners, trading under the name of W. Boyer & Zimmerman, made their promissory note for the payment, fifteen months after date, to the order of G. Gundrum, of $537.50, without defalcation, for value received, which note was in due form endorsed by the said G. Gundrum, and the amount of said note ordered to be paid to Lewis H. Giese and James H. Giese, then partners, and trading in the name of Giese & Son. On the 12th day of January, 1850, the said Giese & Son, having been unable to meet and pay all their debts as their payments were demanded, executed an assignment of all their *partnership* property, real, personal, and mixed, of whatsoever kind, or wheresoever found, including 'all book accounts, bonds, bills, notes, evidences,' &c., to the said Jos. J. Speed, in trust for the benefit of their creditors [*Pro ut* said assignment as well as a previous assignment dated the 5th May, 1849, referred to in the one of the later date]. Among the property and assets of the said Giese & Son, which came into the hands and possession of the said Joseph J. Speed, by virtue of the aforesaid assignment, was the aforesaid note of Boyer & Zimmerman. To February Term, 1850, No. 40, an action was brought, on the said note, by the said J. J. Speed, as assignee of Giese & Son, against said Boyer & Zimmerman, and a judgment was rendered in favor of the plaintiff on the 22d May, 1850, for the sum of $550.91. A *fi. fa.* was issued on the judgment No. 22, of February Term, 1851, by virtue of which the sheriff made the debt, interest and costs of said judgment—the amount of the debt and interest is $574.98,—which sum the sheriff has ready to be paid over to the persons entitled to the same, and is considered by the parties to this case the same as if he had paid the money into court. On the 9th day of July, 1850, William J. May and Reuben Klose, late partners trading under the firm of May & Klose, issued a foreign attachment in the Court of Common Pleas of Union county, No. 29, of September Term, 1850, against Lewis H. Giese and James H. Giese, lately trading under the firm of Giese & Son, with notice to William Boyer & Jacob G. Zimmerman, garnishees. To this

[Speed *v.* May.]

attachment the sheriff made return that he had served the same on Boyer & Zimmerman, on the 10th of July, 1850, by attaching 'all debts, bonds, notes, judgments, and liabilities due by said William Boyer & Jacob G. Zimmerman, particularly a certain judgment in the Common Pleas of Union County, No. 40, February Term, 1850, on which judgment was rendered against Giese & Son, on the 27th of February, 1851, for the sum of $2220.' It is also agreed that the said Giese & Son resided in the city of Baltimore, in the state of Maryland, at the time of executing both the assignments, and that the latter one *never was recorded in the county of Union,* in the state of Pennsylvania. That the parties to the promissory note aforesaid, all reside in the state of Pennsylvania, except Giese & Son, and J. J. Speed. If from the foregoing facts the Court should be of opinion that the plaintiff is entitled to the money aforesaid, then judgment to be entered for the above sum of $574.98. But if they should be of opinion that the defendants are entitled to the same, then judgment for defendants. The costs of this case to be paid out of the funds."

Judgment was rendered for defendants. By the Court. A. S. WILSON, President.

It was stipulated in the assignment of 12th January, 1850, that after deducting for expenses and seven and a half per cent. for commissions to Speed, he should apply the residue of the proceeds to or towards the payment and discharge of the claims of all the creditors of the said Giese & Son, equally according to their respective legal rights or to the payment in full of their claims, if the funds be sufficient for that purpose; and the residue, if any, after paying all the creditors of the said Giese & Son, ratably or in full as aforesaid, to pay over to them, the said Giese & Son, their executors, administrators, or assigns.

The case was argued by *Slenker,* for plaintiff in error.—He contended that a voluntary assignment for the benefit of creditors made in one state, will transfer personal property situate in another state, against a foreign attachment issued in the latter by citizens thereof: 3 *Bin.* 394, U. S. *v.* Vaughan. That there is "a solid distinction between a *voluntary* conveyance by the owner of property, and an *involuntary* legal conveyance by the mere authority of law. The former has no relation to place: the latter, on the contrary, has the strictest relation to place:" *Story on Conflict of Laws,* page 684, sec. 411; see also 2 *Kent's Com.* 407; Lowry *v.* Hall, 2 *W. & Ser.* 131–2; Milne *v.* Moreton, 6 *Bin.* 353, 361, &c.; Milliken *v.* Augenbach, 1 *Pa. Rep.* 117, 125; Holmes *v.* Remson, 20 *Johns.* 259, 260; 2 *Bailey's S. Car. Rep.* 163; 4 *Barr* 274; 1 *Dal.* 231–2; 4 *W. & Ser.* 203.

It was objected to the assignment, on the argument in the court

below, that it did not purport to convey the separate property of
the assignors; and the cases of Hennessy *v.* The Western Bank, 6
*W. & Ser.* 300, and *In Re Wilson's account*, 4 *Pa. S. R.* 430, were
cited to sustain the objection.

But it is submitted, whether either of those cases sustains the
position, because the assignment which gave rise to both those
cases, stipulated for a release in full, and this court put it on that
ground exclusively: see 6 *W. & Ser.* 311.

But even when the assignment stipulated for a release, and the
separate property not assigned was encumbered to an amount more
than it was worth, the assignment was held good: Fassit *v.* Phillips,
4 *Whar.* 399; 5 *Rawle* 221.

*Merrill* and *Woods*, for defendants.—It was contended that a
voluntary assignment for the benefit of creditors made in one
state, will not transfer personal property in another state against
a foreign attachment issued by citizens of the latter: 13 *Mass.*
*Rep.* 146, Ingraham *v.* Guyer; 6 *Bin.* 353, Milne *v.* Moreton;
*Story on Conflict of Laws* 683; 23 *Wendell* 87; 14 *Martin's Rep.*
97 to 103; 17 *Mass.* 110; *Story on Conflict of Laws* 650–656;
6 *Pick.* 307.

The law of the actual *situs* not only protects the ownership of
movable property, but prescribes the mode of its transfer: Lowry *v.*
Hall, 2 *W. & Ser.* 132. The assignment is not in accordance with the
laws of Pennsylvania. No schedule was filed. Bond was not given
as required by the Act of 14th June, 1836, relative to assignments.
The assignment is void in Pennsylvania, because it stipulates for
the payment to the assignors of the balance remaining after pay-
ing their *partnership* debts, and does not give it to their separate
or individual creditors: M'Clurg *v.* Lecky, 3 *Penn. R.* 91–2; 7
*W. & Ser.* 219–227; 6 *Barr* 121–123; 6 *W. & Ser.* 311; 5
*Cowen*, 549; 9 *Ib.* 73–86.

The opinion of the court, filed August 23, was delivered by
GIBSON, C. J.—The principles of this case were discussed in
Milne *v.* Moreton, 6 *Bin.* 360; in Mullikin *v.* Aughinbaugh, 1
*Penn. R.* 117; and in Lowry *v.* Hall, 2 *W. & Ser.* 131; to which
it is sufficient to refer for them. It will there be seen, that an in-
voluntary transfer of movable property abroad by process at home,
does not divest the title in prejudice of creditors domiciled at the
place of the actual *situs;* but that a voluntary transfer by the act
of the owner divests it everywhere. The legal *situs* follows the
domicile of the owner, and the law of the actual *situs* protects the
claims of domiciled creditors there only against transfer by opera-
tion of law. It is by a rule founded on this distinction, that let-
ters of administration vest no title to property abroad; and that
probate of a will at the place of the actual *situs*, enables the exe-

cutor to recover it, the will being a testamentary assignment by the voluntary act of the testator. Granting, for the sake of argument, that the actual *situs* of the debt in question was in Pennsylvania, the voluntary assignment of it in Maryland, by the owners of it, vested it in the trustees there against their creditors here. The assignment was as operative to transfer the property in the first instance as it would have been had it been executed by a citizen of Pennsylvania. It is argued, however, that the contract of assignment is void for want of conformity to the laws of our own state. The legal presumption is, that it was intended to be performed at the place where it was made; and, as there is nothing to rebut it, the law of the contract is the law at the place of its origin. In Allshouse *v.* Ramsey, 6 *Whart.* 331, a promise made in Jersey to pay the debt of another, was held by this court to be void by the statute of frauds of that state, though the particular section was not in force in our own. It is not to be doubted, that this assignment was in its origin and purpose a Maryland contract. It was sealed there, and the trusts created by it were to be executed there. The *lex loci contractus* determines the validity of the contract; the *lex fori* controls the remedy. True, it was said in Lowry *v.* Hall, 2 *W. & Ser.* 132, that the law of the actual *situs* not only protects the ownership of movable property, but prescribes the mode of its transfer; but that was predicated of the distinction between transfer by act of the party and transfer by act of the law. In other respects, the law of the *situs* regulates the transfer of real property alone. There is nothing in the case stated, therefore, to bar a recovery.

Judgment below reversed and judgment here for the plaintiff.