# CHARLESTON.

### Yost v. Graham.

Submitted June 10, 1901. Decided November 23, 1901.

1. VOLUNTARY ASSIGNMENT—*Property Effected.*
    A voluntary assignment by a party, according to the law of his domicil, will pass his personal estate, whatever may be its locality, abroad as well as at home. (p. 207).

2. ASSIGNMENT—*Fraud Must Be Proved.*
    It is not enough that the purpose of the assignor be fraudulent, knowledge of such purpose must be clearly brought home to the assignee. (p. 206).

3. PERSONAL PROPERTY—*Follows Domicil of Owner.*
    The legal *situs* of personal property follows the domicil of the owner, and the law of the actual *situs* protects the claims of creditors domiciled there, only against transfers by operation of law. (p. 207).

Apeal from Circuit Court, Marion County.

Bill by P. W. Yost and others against A. C. Graham and others. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

W. S. MEREDITH and B. L. BUTCHER, for appellants.

U. N. ARNETT, JR., W. H. CONAWAY, and J. P. KIRBY, for apellees.

. McWHORTER, JUDGE:

A. C. Graham had two contracts to drill oil wells, one with the South Penn Oil Co. to drill well No. 4, on the Wilson heirs farm, the other with the Fisher Oil Co. The South Penn Oil Co. advanced money to the said contractor so that he was indebted to said company for such advancement in the sum of eight hundred and seventy-one dollars and fifteen cents, besides about two hundred and fifty dollars for gas used in drilling the well on the Wilson farm and also one hundred and forty dollars for gas used in drilling well No. 1 on the Toothman farm. There was also held back in the hands of the South Penn Oil Co. the sum of one thousand dollars on said contract which was not due nor payable until the contract should be completed. The contractor was otherwise considerably involved. He got his tools fast in the Wilson well and had what oil men call a "fishing job," and being unable to proceed with his work, on the 31st of March, 1896, he assigned, in the city of Pittsburg, Pennsylvania, to his brother William M. Graham his said contracts for boring said wells which assignment was subject to all the terms and conditions contained therein, and the said W. M. Graham agreed to faithfully perform all the covenants contained in said contracts, thereby assuming all liability thereunder.

On the 25th day of March, 1896, C. E. Conaway brought his civil action before a justice of Marion County against A. C. Graham to recover on an account of two hundred and ninety dollars and fifteen cents, and on the 31st day of March recovered a judgment thereon, and on the 31st day of March, 1896, execution on said judgment issued, and on the 5th day of April was placed in the hands of Spencer King, constable of said county.

P. W. Yost and Sons brought their action against A. C. Gra-

ham in the intermediate court of Marion County on an account they had against Graham for four hundred and seventeen dollars and ninety-three cents, and on the 12th day of May sued out an attachment and served a suggestion on the South Penn Oil Co., and on the 25th day of May the court rendered judgment in favor of plaintiffs against A. C. Graham. The South Penn Oil Co. answered the suggestion to the effect that there was in its hands one thousand dollars under two certain contracts made with A. C. Graham to drill and complete two oil wells for said company, the said No. 4 on the Wilson heirs' property, and well No. 2 on the Toothman farm, that by the terms of which contracts the said Graham was to receive no compensation for his labor until his work was completed; and that before said wells were completed on the 31st day of March, 1896, the said A. C. Graham assigned the said contracts to William M. Graham who claimed the benefits of said contracts since said wells had been completed. Other parties also brought their actions at law against said A. C. Graham and sued out attachments.

P. W. Yost and Sons and the other judgment creditors filed their bill in the intermediate court of Marion County against said A. C. Graham, William M. Graham, and the South Penn Oil Co. at the July rules, 1897, setting up their respective claims and judgments and claiming the same should be paid out of the one thousand dollars retained in the hands of the South Penn Oil Co., to be paid in the order of the priority of their several attachment liens levied thereon by the service of said attachment and suggestions of the South Penn Oil Co., the custodian of said fund, alleging that the pretended assignment of the several contracts to the defendant William M. Graham was fraudulent and void as to the debts of the plaintiffs which were valid and existing debts at the time said assignment was made and that said William M. Graham had notice thereof; that the assignment was made for the purpose of hindering, delaying, and defrauding the creditors of said A. C. Graham and especially the plaintiffs; that at the time of the assignment of the contracts for drilling, the wells were almost completed and that plaintiffs had furnished material and labor to said A. C. Graham during the progress of the work of drilling and completing said wells upon the faith, promise, and expectation of being paid from the price of said work when completed according to the terms of

the contracts; that said William M. Graham did but a small amount of work to complete the wells after the pretended assignment to him and that he paid absolutely nothing for said contracts to said A. C. Graham or to anyone for him but that the assignment was made without consideration and for the purpose of hindering, delaying, and defrauding his creditors, etc.; that A. C. Graham was insolvent so far as plaintiffs could learn and had no other property in West Virginia than that in the hands of the South Penn Oil Co.; that said Grahams were brothers and non-residents of West Virginia; and averring that the name of "A. L. Graham" in the writ was meant and intended for the defendant A. C. Graham and praying that the South Penn Oil Co. be restrained from paying said fund or any of it to said Grahams or either of them; and that the assignment of said contracts be set aside as fraudulent and void as to the debts of plaintiffs respectively and that the fund in the hands of the South Penn Oil Co., or that may have been in its hands be applied to their debts, etc.; and for general relief.

The defendant William M. Graham filed his answer denying all allegations of fraud and denying knowledge on his part of any of the indebtedness of said A. C. Graham to the plaintiffs or any of them and averring that on the 3rd day of March, 1896, the said A. C. Graham, being unable to complete the drilling of the wells under his contract and being largely indebted to the South Penn Oil Co., assigned the said contracts to respondent; that at the time of said assignment said A. C. Graham had attempted to drill said well; that he had been working for about a month endeavoring to fish his tools out of said well but was utterly unable to do so; that under his contract he was to receive no compensation for drilling said well unless he completed it and that unless he could extricate his said tools he would, in order to complete his contract, have to abandon his tools and the work he had done and begin again on another location, thus, losing all the time and money he had expended up to that time; that the South Penn Oil Co. had advanced to him about eight hundred and sixteen dollars and forty-five cents on account of said contract; that he was indebted to said company in the further sum of one hundred and forty dollars for gas used by him on well No. 1 on the Toothman farm and about two hundred and fifty dollars for gas used on the Wilson well No. 4 and, being so indebted and

unable to extricate his tools, he entered into the agreement with the respondent to assign to him the contract of well No. 4 on the Wilson farm; that respondent agreed to complete the contract and assume the said indebtedness to the South Penn Oil Co., and pursuant to the said agreement he assigned the contract and respondent assumed the indebtedness and proceeded to complete the well; that at the time of said assignment it was absolutely impossible to tell whether or not he would be able to extricate the tools and it was probable he would have to abbandon the tools and the work that had been done and drill the well from the top of a new location; that he proceeded at once upon the work and upon its completion he received from the South Penn Oil Co. eight hundred and seventy-one dollars and fifteen cents in cash, allowing them credits for the indebtedness due to them from A. C. Graham and also for gas used by respondent in completing the well; and that said company held in its possession and still holds one thousand dollars on said well to cover the attachments in this case.

The defendant William M. Graham tendered his amended answer which was ordered to be filed herein, he states that the said assignment was made on the 31st day of March, 1896, instead of the 3rd day as stated in his original answer and so corrects it that said assignment was made in the State of Pennsylvania and in pursuance of the laws of said state; that at the time of said assignment the said A. C. Graham and William M. Graham were non-residents of the State of West Virginia and were, citizens of the State of Pennsylvania, residing in the city of Pittsburg of said state and had been citizens of said city and state for a long time prior thereto and are still residents of said state; that in addition to the facts and allegations stated in his original answer, says that on the 3rd day of July, 1897, for valuable consideration he assigned, transferred, and set over all of his claims, debts, demands, and moneys coming from the defendant South Penn Oil Co., and all of his right, title, interest, claims, debts, and demands due and coming from said company under the contract with said company assigned by A. C. Graham to respondent to the Jarecki Manufacturing Co., Limited, a corporation of said state of Pennsylvania and filed with his answer a copy of said assignment.

The Jarecki Manufacturing Co., Limited, having been made a

party defendant tendered its answer asserting its right under the assignment of July 3, 1897, for valuable consideration by the defendant William M. Graham to said company of all his interest in the contracts assigned to him by said A. C. Graham; that the said Jarecki Manufacturing Co. Limited, at the special instance and request of said William M. Graham sold and delivered to him large quantities of oil well supplies to be used by him in drilling oil wells and that said William M. Graham on the 3rd of July, 1897, was indebted to respondent in the sum of over twenty thousand dollars and as a consideration for and in part payment and satisfaction of said indebtedness the said Graham assigned to respondent all his interest, rights, and claims due under said contracts of which assignment defendant the South Penn Oil Co. had due notice and exhibited a copy of the said assignment; that at the time of the assignment by William M. Graham to respondent said Graham was and has been ever since and is now a non-resident of the State of West Virginia and a resident of the city of Pittsburg and state of Pennsylvania; that the said respondent paid a full, fair and valuable consideration for the said contract and the benefits thereunder and became entitled to the same by virtue of the said assignment dated July 3, 1897, and that by virtue of the assignment respondent became and was entitled to the same; that said assignment made by said A. C. Graham to William M. Graham as respondent was advised and believes was made before any suit for the recovery of the several claims mentioned in plaintiff's bill and before the issuing and service of any attachment therein and that the attachments that issued contemporaneously were not liens upon the funds in the hands of the South Penn Oil Co.; that plaintiffs were not legally or equitably entitled to have said funds subjected to the payment of their judgments or claims or either of them and denied that said assignment was made for the purpose of hindering, delaying, and defrauding the creditors of said A. C. Graham. Depositions were taken and filed in the cause.

On the 28th day of October, 1898, the cause was heard in the intermediate court when it was held that the assignment made by A. C. Graham to William M. Graham on the 31st of March, 1896, was fraudulent as to plaintiffs and without consideration deemed valid in law of which the said William M. Graham had notice; and that the fund in the hands of the South Penn Oil Co. was subject to the payment of the demands of the plaintiffs

respectively and proceeded to ascertain the priorities of the claims of the several plaintiffs and to provide for the payment of the same out of the said one thousand dollars in the hands of the South Penn Oil Co. and after the payment of the said claims that the residue should be paid to the defendant Jarecki Manufacturing Co. Limited, assignee of William M. Graham and dismissed the cause as to the plaintiff A. H. Donnally who it was held had established no equity in the case.

The defendants William M. Graham and the Jarecki Manufacturing Co. Limited obtained from the circuit court of Marion County an appeal from and a *supersedeas* to the said final decree of the intermediate court and the same being heard in the circuit court on the 13th day of December, 1899, the court held that the said assignment from A. C. Graham to William M. Graham on the 31st of March, 1896, of the contract with the South Penn Oil Co. for the drilling of well No. 4 on the Wilson heirs property was made for a valuable consideration in the state of Pennsylvania and at the time of said assignment the said A. C. Graham and William M. Graham were both residents of the state of Pennsylvania and that said well was drilled and completed under said contract by William M. Graham after said assignment; and that there was still in the hands of the garnishee South Penn Oil Co. the sum of one thousand dollars of the money due on said contract for the drilling of said well coming to the said William M. Graham and being the same money in controversy in this suit; that on the 3rd of July, 1897, the said William M. Graham for valuable consideration transfered the said money and all his right, title, and interest therein and under said contract to the defendant Jarecki Manufacturing Co. Limited; and reversed and annulled the decree of the intermediate court as erroneous and decreed the assignment from A. C. Graham to William M. Graham to be valid and free from fraud binding upon the parties and not made to hinder, delay, and defraud the creditors of said A. C. Graham; and decreed the payment by the South Penn Oil Co. of the one thousand dollars to the said Jarecki Manufacturing Co. Limited the assignee of William M. Graham and dismissed the bill of plaintiffs, from which decree the plaintiffs P. W. Yost and Sons, Charles E. Conaway, and A. H. Donnally obtained an appeal and *supersedeas* to this Court and assigned as errors first, that it reversed the decree of the intermediate court directing the fund in the hands

of the South Penn Oil Co. to be applied to the debts of plaintiffs; second, in finding the defendants Jarecki Manufacturing Co. Limited entitled to such fund; and third, to decree the consideration of the assignment from A. C. Graham to W. M. Graham as valuable and valid consideration and not fraudulent as to plaintiffs.

This is in effect a suit to set aside as fraudulent the assignment made by A. C. Graham on the 31st of March to W. M. Graham both residents of the state of Pennsylvania and which assignment or contract was made in the state of Pennsylvania. Whatever fraudulent purpose A. C. Graham might have had in making the assignment there is no evidence that W. M. Graham had any knowledge whatever of it, the evidence shows that he acted in good faith in receiving the contracts and paid a fair price for them taking all the risk of losing everything that had been spent on the work up to that time. A. C. Graham had gotten his tools fast in the Wilson well and had been working something like a month in unsuccessful effort to extricate them and W. M. Graham having assumed to complete the contract, there was a strong probability that he would have to change location and drill a new well from the beginning. In *Goshorn* v. *Snodgrass,* 17 W. Va. 717, syl. pt. 8, it is held, "Under our statute of frauds, as well as the English statute of 13 Elizabeth, a *bona fide* purchaser for value, having no notice of covin, fraud, collusion, etc., will be protected. To vitiate a conveyance, there must be a fraudulent design in the grantor, and notice of that design in the grantee." *Wood* v. *Harmison,* 41 W. Va. 376; (23 S. E. 360). *Herring* v. *Wickham,* 29 Grat. 628, syl. pt. 1, holds that "If the grantee in a deed be a *bona fide* purchaser for a valuable consideration, his or her title is unassailable, whatever may have been the motives or intentions of the grantor in executing the deed. It is absolutely essential that both parties concur in the fraud, to invalidate the deed," and *Hayden* v. *Wagner,* 22 W. Va. 356, syl. pt. 9, "The *onus probandi* is on him who alleges fraud, and, if the fraud is not strictly and clearly proven as it is alleged, relief cannot be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings." *Armstrong* v. *Bailey,* 43 W. Va. 778, (28 S. E. 766). *Batchelder* v. *White,* 80 Va. 103, syl. pt. 4, holds "It is not enough that the purpose of the grantor be fraudulent, knowledge of such purpose must be clearly brought home to the alienee.

When the latter has denied such knowledge on oath it cannot be held that his denial is overthrown by mere circumstances of suspicion adduced against him." *Shintz* v. *Johnson,* 28 Grat. 657; *Miller* v. *Fraley,* 23 Ark. 735.   It is held in *Saunders* v. *James,* 85 Va. 936, (9 S. E. 147,) that "Where, to bill calling for discovery and alleging fraud, there is a responsive answer, positively denying the allegations, and they are unsustained by evidence at the hearing, the bill must of course be dismissed with costs." *Hickman* v. *Trout,* 83 Va. 478, (3 S. E. 131).   Under section 59, chapter 125, Code, the effect of an answer denying the material allegations of a bill is to put the plaintiff on satisfactory proof of the truth of such allegations.   *Jarrett* v. *Jarrett,* 11 W. Va. 584; *Bronson* v. *Vaughn,* 44 W. Va. 406, (29 S. E. 1022).

Quoting from Bump on Fraudulent Conveyances, s. 510, "It is one of the maxims of international jurisprudence that personal property as a rule, has no *situs* but appertains to the person of the owner and that, as a consequence, such owner can (dispose of it by any instrument or in any method and to such uses as are authorized by the law of the place where the conveyance is executed, * * * * The principle that personal effects have no locality arises out of the necessities of trade.   It is accordingly held almost universally that an assignment or transfer valid by the laws of the state where it is made will be upheld everywhere. A debt has no *situs* and is deemed in contemplation of law to be attached to and to follow the person of the creditor."   In section 411 Story on Conflict of Laws, it is laid down that "A voluntary assignment by a party, according to the law of his domicil, will pass his personal estate, whatever may be its locality, abroad as well as at home," and cites *Speed* v. *May,* 17 Pa. 91, where it is held: "The legal *situs* of personal property follows the domicil of the owner, and the laws of the actual *situs* protects the claims of creditors domiciled there, only against transfers *by operation of law;* therefore a *voluntary* assignment made by the owner in Maryland, who resides there, passed the property in a claim in Pennsylvania to the assignee, and his right was not divested by a foreign attachment issued in Pennsylvania subsequent to the assignment."   Also in *Law* v. *Mills,* 18 Pa. St. 185, syl. pt. 2, "The validity of a voluntary assignment of personal estate in trust for creditors, is to be determined by the law of the place of its execution; therefore a voluntary assignment

made in New York, of personal estate in Pennsylvania, which is valid by the laws of New York, will operate to pass to the assignee the property in Pennsylvania assigned thereby." *Richardson* v. *Leavitt,* 1 La. Ann. 430, 45 Am. Dec. 90; *Bank* v. *Getlinger,* 3 W. Va. 309; *Harrison* v. *Bank,* 9 W. Va. 424; *Born* v. *Shaw,* 29 Pa. St. 288, 72 Am. Dec. 633.

There is some evidence that the defendant had a purpose of defeating C. E. Conaway in the collection of his claim and the same purpose might have applied to all the plaintiff's creditors but the evidence fails to show that W. M. Graham had any notice of such purpose or of any fraudulent intent on the part of A. C. Graham. Whether the subject matter of the assignment from A. C. Graham to W. M. Graham was of such a character as could be reached by legal process, matters little as all the proceedings by the plaintiffs or any of them that might otherwise have been effective were subsequent to the assignment, hence too late to effect their object. I see no error in the decree of the circuit court and the same will have to be affirmed.

*Affirmed.*