Catlin v. The Wilcox Silver-Plate Company.

No. 14,263.

123 477
151 177
152 243

CATLIN v. THE WILCOX SILVER-PLATE COMPANY.

FOREIGN RECEIVER.—*Rights of as Against Non-Resident Attaching Creditors in Courts of this State.*—The plaintiff, a citizen of Connecticut, attached in this State a debt due from a resident of this State to a partnership located in the State of Illinois. Previous to the attachment the partnership, being insolvent, had made a general assignment to a receiver, in obedience to an order of the Superior Court of Cook county. *Held*, that the receiver did not acquire a title to the debt that was good against the attachment by the non-resident creditors.

SAME.—*Foreign Court.—Funds Within Jurisdiction of.*—A receiver may invoke the aid of a foreign court in obtaining possession of property or funds within its jurisdiction to which he is entitled, but aid will be extended only as against those who were parties to, or in some way in privity with, the proceedings in the course of which his appointment was made, or who are in possession of the property or fund to which the receiver has a right, and not against creditors of a non-resident debtor, who are seeking to subject the property, or fund, to the payment of their debts, by proceedings duly instituted for that purpose.

SAME.—*Legal Authority of.—Priority of Creditors.*—The available legal authority of a receiver is co-extensive only with the jurisdiction of the court by which he was appointed, when the right of precedence or priority of creditors is asserted in respect to property or funds of a non-resident debtor which the receiver has not yet reduced to possession.

SAME.—*Involuntary Assignments.—Foreign Property.* — Assignments made under legal compulsion, as assignments to a receiver, are inoperative upon property not situate within the territory over which the laws that make or compel the debtor to make them, have dominion.

From the La Porte Circuit Court.

*L. A. Cole,* for appellant.

*F. E. Osborn, W. B. Biddle* and *J. H. Bradley,* for appellee.

MITCHELL, C. J.—The question for decision arises upon the following facts:

Clapp & Davies, partners, doing business in the city of Chicago, were indebted to certain judgment creditors resid-

ing in that city. They were also indebted to the Wilcox Silver-Plate Company, and others who were residents of the State of Connecticut. At the same time Bagley & Oberreich, partners, residing and doing business at La Porte, Indiana, were indebted in a considerable sum to Clapp & Davies. One of the judgment creditors instituted proceedings in chancery against the latter firm by filing a creditor's bill in the Superior Court of Cook county. In aid of its jurisdiction in the proceeding thus instituted the court appointed the appellant Catlin receiver, and by an order made on the 14th day of April, 1887, required Clapp & Davies to execute a general deed of assignment, transferring all their partnership property and effects to the receiver. Subsequently, in the month of June, the Wilcox Silver-Plate Company instituted a suit in attachment, in the La Porte Circuit Court, against Clapp & Davies, and summoned Bagley & Oberreich to answer as garnishees. The other Connecticut creditors became parties to this last proceeding, under section 943, R. S. 1881. Thereupon Catlin, as receiver of the Superior Court of Cook county, intervened by leave of the La Porte Circuit Court, and asserted the right, in virtue of his appointment as receiver and the assignment made to him, to take and hold the debt due Clapp & Davies from Bagley & Oberreich.

The controversy, as will appear, involves the right to the fund in the hands of the garnishee defendants, and the question presented is, are the rights of the non-resident attaching creditors paramount in the courts of this State to those of the receiver of the superior court of Cook county, whose appointment antedates the issuing of the writ of attachment? The solution of the question depends upon the extent of power which a court of general jurisdiction, sitting in one State, can exert over property whose actual *situs* is within the jurisdiction of the courts of a foreign State.

A receiver is nothing more than an officer or creature of the court that appoints him. His acts are those of the court,

whose jurisdiction may be aided, but in nowise enlarged or extended by his appointment. His power is only coextensive with that of the court which gives him his official character.

While it has been held that a court may appoint a receiver, and authorize him to take possession of property in a foreign jurisdiction, the doctrine is universal that the appointment confers no legal authority which the receiver can exert over the property without the aid of the courts in whose jurisdiction it is found. The appointment, of its own force, gives him the right to take possession of the property, but it confers upon him no power to compel the recognition of that right outside the jurisdiction of the court making the appointment. High Receivers, sections 47, 241. While there are authorities of great weight which seem to hold that a receiver appointed in one jurisdiction will not be permitted to maintain a suit in a foreign State, the generally prevailing doctrine upon which all the decisions seem to be harmonious is, that upon the principles of comity the courts of the jurisdiction in which the property or fund is situate, will recognize the rights of the receiver so far as to aid him in reducing it to possession, unless to do so would in some way violate the local policy or interfere with the rights of resident creditors. *Metzner* v. *Bauer*, 98 Ind. 425, and cases cited; Beach Receivers, sections 16, 19, 682; *Bank* v. *McLeod*, 38 Ohio St. 174. But the recognition of well-established principles of comity and courtesy between courts of different jurisdictions is one thing, while the rights of resident or other attaching creditors who are seeking to avail themselves of legal proceedings authorized by statutes of the State for the appropriation of a fund belonging to a non-resident debtor, must be determined upon altogether different principles. As has in effect been said, courts are prepared to extend comity where there is no reason to the contrary, especially if there is no interest of their own citizens, or of the citizens of another State who are asking the

protection of their laws, injuriously affected by such recognition.    *Paine* v. *Lester,* 44 Conn. 196; *Milne* v. *Morton,* 6 Binn. 353.

The rule may be considered as established that a receiver may invoke the aid of a foreign court in obtaining possession of property or funds within its jurisdiction to which he is entitled, but aid will only be extended as against those who were parties to, or in some way in privity with, the proceedings in the course of which his appointment was made, or who are in possession of the property or fund to which the receiver has a right, and not against creditors of a nonresident debtor, who are seeking to subject the property or fund to the payment of their debts, by proceedings duly instituted for that purpose.

Accordingly, in *Hurd* v. *City of Elizabeth,* 41 N. J. L. 1, the court said: " That the officer of a foreign court should not be permitted, as against the claims of creditors resident here, to remove from this State the assets of the debtor, is a proposition that appears to be asserted by all the decisions." The principle upon which the decisions rest is, that it is the policy of every government to retain within its control the property of a foreign debtor until all domestic claims have been satisfied, and hence the right of the receiver of a foreign court to sue, which is allowed only upon considerations of comity, will be denied when it comes in conflict with the interests of domestic creditors.

" We decline," said the court in *Runk* v. *St. John,* 29 Barb. 585, " to extend our wonted courtesy so far as to work detriment to citizens of our own State who had been induced to give credit to the foreign insolvent."    *Bagby* v. *Atlantic, etc., R. R. Co.,* 86 Pa. St. 291 ; *Insurance Co.* v. *Wright,* 55 Vt. 526 ;    *Thurston* v. *Rosenfield,* 42 Mo. 474 (97 Am. Dec. 351) ; *Willitts* v. *Waite,* 25 N. Y. 577 ;    22 Am. Law Reg. 289.

It follows, hence, that the available legal authority of a receiver is coextensive only with the jurisdiction of the

court by which he was appointed when the right of precedence or priority of creditors is asserted in respect to property or funds of a non-resident debtor which the receiver has not yet reduced to possession. *Hunt* v. *Columbian Ins. Co.*, 55 Maine, 290 ; *Warren* v. *Union Nat'l Bank*, 7 Phila. 156 ; *Booth* v. *Clark*, 17 How. 322 ; *State* v. *Jacksonville, etc., R. R. Co.*, 15 Fla. 201 ; *Farmers, etc., Ins. Co., ex rel.*, v. *Needles*, 52 Mo. 17 ; *Taylor* v. *Columbian Ins. Co.*, 14 Allen, 353.

It is said, however, that as Clapp & Davies were residents of the State of Illinois at the time the receiver was appointed, the debt due them from Bagley & Oberreich was within the jurisdiction of the superior court of Cook county, upon the principle that the domicile draws to it the personal property and choses in action of the owner, wherever they may be situate. Hence, the contention is that as the appointment of the appellant as receiver was followed by a general deed of assignment, valid in the State of Illinois, it must be regarded as valid here, and as divesting Clapp & Davies of all title or interest in the debt in controversy after the date of the assignment.

It is of course well settled that personal property is transferrible according to the law of the owner's domicile, and that a voluntary assignment or transfer, made without compulsion or legal coercion, is to be governed everywhere by that law, unless the contract by which the transfer was made is limited or restrained by some policy or positive enactment of the State in which the property is situate or unless it affects citizens of the latter State injuriously. *Ames Iron Works* v. *Warren*, 76 Ind. 512 ; *Martin* v. *Potter*, 11 Gray, 37 (71 Am. Dec. 689) ; *Weider* v. *Maddox*, 66 Tex. 372 (59 Am. Rep. 617) *Warner* v. *Jaffray*, 96 N. Y. 248 ; *Green* v. *Van Buskirk*, 7 Wall. 139 ; *Askew* v. *La Cygne Bank*, 83 Mo. 366 (53 Am. Rep. 590) ; *Law* v. *Mills*, 18 Pa. St. 185 ; Burrill Assignments, 301 ; Story Conflict of Laws, 383, 390.

"The voluntary transfer of a chattel by the debtor, if it be

not forbidden in other respects by the law at the place of the *situs*, is to be as much regarded there, or elsewhere, as it would be at the place of the domicile." *Lowry* v. *Hall*, 2 Watts & S. 129. *Smith's Appeal*, 104 Pa. St. 381 ; *Chaffee* v. *Fourth Nat'l Bank*, 71 Maine, 514 (36 Am. Rep. 345) ; 15 Am. Law Rev. 251).

Such an assignment will not be upheld, however, if it contravenes the policy of the law of the place where the property is situate. *Guillander* v. *Howell*, 35 N. Y. 657 ; *Faulkner* v. *Hyman*, 142 Mass. 53 ; *Moore* v. *Church*, 70 Iowa, 208 ; *In re Waite*, 99 N. Y. 433.

The principles above stated are applicable only to transfers or assignments of property which rest essentially on contract, and are voluntary in the sense that they are the product of a will acting without legal compulsion. Property in a foreign State that has passed from an assignor to an assignee by a voluntary deed, and not by proceedings *in invitum* by process of law, is distinguished from like property in the hands of a receiver by operation of law, or by an assignment made under legal compulsion. Assignments of the latter class are held inoperative upon property not situate within the territory over which the laws that make or compel the debtor to make them have dominion. *Rhawn* v. *Pearce*, 110 Ill. 350; *Smith's Appeal, supra; Weider* v. *Maddox, supra.*

Involuntary assignments which are made under foreign insolvent laws, have no operation outside of the State under whose laws they were made, while a voluntary assignment is a personal common law right, possessed by every owner of property, and may operate in one State as well as another. *Walters* v. *Whitlock*, 9 Fla. 86 (76 Am. Dec. 607).

Some conflict or contrariety of opinion may be found in the decisions in respect to what may or may not constitute a voluntary assignment under the statutes of different States, but it is unnecessary to enter upon a discussion of the cases relating to voluntary assignments, as all the authorities

agree that where an assignment is made under compulsion of law, or where property is taken *ab.invitum*, the transfer will not be regarded as voluntary, nor will it be effectual beyond the jurisdiction in which it was made, when it conflicts with the interests of citizens in a foreign jurisdiction. As we have seen, a court can not extend its jurisdiction by the appointment of a receiver, so it is equally powerless to do so by coercing an assignment of the property in controversy. An assignment is regarded merely as a matter. of convenience in aid of the jurisdiction of the court, the established doctrine being that as against non-resident creditors the assignment confers no additional or higher right to the property than the receiver had by virtue of his appointment. *Iddings* v. *Bruen*, 4 Sandf. Ch. 239 ; High Receivers, section 443.

While it is true, as has been remarked before, the domicile of the owner, in legal contemplation, draws to it his personal estate, wherever it may be, yet as this is so only by fiction of law, the rule is not of universal application. When, by the laws and policy of the State where the property is actually located, it is subject to the process of attachment or garnishment at the suit of a domestic or other creditor, the fiction yields, and the actual *situs* of the property determines whether or not it should be subjected to the process of the court. *Warner* v. *Jaffray, supra ; Green* v. *Van Buskirk, supra.* In cases of attachment and garnishment, like those for founding administration, the *situs* of a debt is the residence of the debtor. *Wyman* v. *Halstead,* 109 U. S. 654 ; *Owen* v. *Miller,* 10 Ohio St. 136.

It is said, however, that the principles of comity which control in aid of the receiver of a foreign court, who is seeking to obtain possession of a fund, should only be suspended in their operation in favor of domestic creditors, and that inasmuch as the attaching creditors in the present case are all non-residents of the State, the aid of the court should have been extended to the receiver and denied the creditors.

While this position is not without support, it is not in our view maintainable.

Although non-residents, the attaching creditors are properly in our courts, pursuing a remedy which the statute confers upon foreign as well as domestic creditors. Until the Legislature shall declare a different policy, the rights of a foreign creditor against the property of a debtor, must be regarded by the courts as in all respects the same as those of resident creditors, so far as respects proceedings in attachment and garnishment. The rule which commends itself to our judgment is thus declared: "Once properly in court and accepted as a suitor, neither the law, nor court administering the law, will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals there can be no preference of one over the other." *Hibernia Bank* v. *Lacombe,* 84 N. Y. 367. *Rhawn* v. *Pearce, supra; Warner* v. *Jaffray, supra; Paine* v. *Lester, supra.* This rule governs the more recent decisions.

The conclusions above stated lead to an affirmance of the judgment.

Judgment affirmed, with costs.

Filed April 29, 1890.