HUNTINGTON v. CHESAPEAKE, O. & S. W. RY. CO. et al. (ZACHER, Intervener).

(Circuit Court, D. Kentucky.    July 1, 1899.)

1. INSOLVENT CORPORATIONS—SUIT FOR WINDING UP.
    Where a suit for the winding up of a corporation is instituted by a stockholder under a state statute, it is to be regarded as adversary, and not voluntary, as to the corporation, and its character as such is not affected by the fact that the corporation offers little or no resistance to the proceeding.

2. SAME—EFFECT OF ASSIGNMENT UNDER STATE INSOLVENCY LAWS—PROPERTY IN OTHER STATES.
    Where, after the institution of such suit, and the appointment of a receiver therein, the corporation executes a conveyance of all its property to the receiver in his official capacity, such conveyance is, in effect, one made

under the insolvency statute of the state, and not a voluntary common-law assignment, and as such it operates only on property within that state. As to property in other states, it has only such effect as may be given it by their laws, and, in general, must give way to the claims of creditors pursuing their remedies there.

On Intervening Petition of Edmund Zacher, Receiver.

Simrall & Doolan, for plaintiff in garnishment Cranch.

Humphrey & Davie, for intervener Zacher.

Harris & Barr and Wallace & McDonald, for garnishee Fidelity Trust & Safety-Vault Co.

EVANS, District Judge. The Newport News & Mississippi Valley Company was a corporation organized under the laws of the state of Connecticut, and authorized to lease and operate railroads in any state except Connecticut. In 1886 it leased a railroad in Kentucky belonging to the Chesapeake, Ohio & Southwestern Railway Company, and operated it until July 31, 1893, when the lease, by mutual consent of the parties, was canceled. Meanwhile the first-named company became insolvent, owing at the time something over $1,000,000 to C. P. Huntington. Shortly after this particular indebtedness was satisfactorily arranged, namely, at a meeting of the stockholders held March 16, 1894, it was unanimously resolved by the quorum of stockholders present that the affairs of the company be wound up. On March 20, 1894, in a suit brought against the company by C. P. Huntington in the superior court of Connecticut, and after the service upon defendant of a copy of the complaint therein, Edmund Zacher was appointed a temporary receiver for the company. Huntington was then a stockholder, but not a creditor, of the Newport News & Mississippi Valley Company, against which his suit was filed. On April 13, 1894, the said Zacher was made the permanent receiver, and by the judgment of the court then entered was given full power and authority to take charge of the affairs, property, and business of the defendant corporation, wherever situate, and to manage the same. This was all done under the provisions of section 1942 of the General Statutes of Connecticut, which reads as follows:

"The superior court in the county in which any corporation, organized under the laws of this state, has its principal place of business, may, as a court of equity, on the application of any of its stockholders, wind up its affairs and dissolve it, if said court shall find that said corporation has voted to wind up its affairs, or abandoned the business for which it was organized, and has thereafter neglected within a reasonable time or in a proper manner to wind up its affairs and distribute its effects among its stockholders; and for this purpose may, if it deem it necessary, appoint one or more receivers of the estate of said corporation, and limit a time for its creditors to present their claims to such receivers, and direct public notice thereof to be given; and all claims not presented within such time shall be barred. Said receivers shall allow all just claims against said corporation, collect its debts, sell its property, and convert the same into money, and report their doings to said court as it may direct. Said court may, on complaint of any person aggrieved by such doings, grant such relief as the nature of the case may require; and it may make such orders as to the doings of the receivers, their compensation, and other expenses, and as to the payment of debts and distribution of the effects of said corporation, as may be just and conformable to law."

Under date of April 14, 1894, but upon acknowledgment taken on May 9, 1894, the company, by its president, F. H. Davis, executed a writing to said Zacher, receiver, which, with its certificate of acknowledgment, is in the following words:

"Know all men by these presents, that the Newport News & Mississippi Valley Company, a corporation created, organized, and existing under the laws of the state of Connecticut, for and in consideration of one dollar to it in hand paid, the receipt whereof is hereby acknowledged, has granted, conveyed, assigned, transferred, and set over, and hereby grants, conveys, assigns, transfers, and sets over, to Edmund Zacher, of the city of New Haven, in the state of Connecticut, as he has been appointed by the superior court of the state of Connecticut, in and for the county of New Haven, receiver of the property of the said Newport News & Mississippi Valley Company, all the property and assets, real, personal, and mixed, of said Newport News & Mississippi Valley Company, and all the claims, demands, and choses in action of or belonging to the said Newport News & Mississippi Valley Company, of whatever character the same may be, or in whatever state or country the same may be situated, to have and to hold to the said Zacher, as he has been appointed receiver, as aforesaid, and his successors and assigns, forever.

"In witness whereof the said Newport News & Mississippi Valley Company has caused these presents to be signed by its president, and its corporate seal to be hereunto affixed and attested by its secretary, this 14th day of April, 1894.

"Newport News & Mississippi Valley Co.,

"[Seal.]                                                     By F. H. Davis, President.
"Attest:   Chas. Babbidge, Secretary."

"State of New York, City and County of New York—ss.: I, George H. Corey, a commissioner for the state of Kentucky, duly commissioned and qualified, and residing in the city and county of New York, hereby certify that this instrument of writing from the Newport News & Mississippi Valley Company to Edmund Zacher was this day produced to me by the parties, and which was acknowledged to me by Frank H. Davis, president, and Charles Babbidge, secretary, to be the act and deed of said the Newport News & Mississippi Valley Company. Given under my hand and official seal this ninth day of May, A. D. 1894.

"[Seal.]            Geo. H. Corey, Commissioner for the State of Kentucky.
"Office:  66 Wall Street, N. Y."

There appears to have been no authority given by the company to its president to execute such a paper until May 8, 1894, when it was done at a meeting of the stockholders by a resolution in the following language:

"New York, May 8th, 1894.

"A meeting of the board of directors of the Newport News & Mississippi Valley Company, duly called, was held at the office of the company, No. 23 Broad street, at three o'clock p. m. Present: I. E. Gates, F. H. Davis, A. K. Van Deeventer, C. Weidenfeld, and Charles Babbidge. On motion of Mr. Gates, seconded by Mr. Weidenfeld, it was resolved that the conveyance and transfer of all the property and assets, real, personal, and mixed, of this company, and all the claims, demands, and choses in action of or belonging to this company, of whatever character the same may be, or in whatever state or country the same may be situated, heretofore executed to Edmund Zacher, as he has been appointed by the superior court of the state of Connecticut, in and for the county of New Haven, receiver of the property of this company, and the execution on behalf of this company, under its corporate seal, of an instrument making such conveyance and transfer, be, and the same hereby is, in all respects, authorized, ratified, approved, and confirmed. There being no other business, the meeting adjourned.            Attest:   Charles Babbidge, Secretary."

It was the evident purpose of the stockholders, as appears from the closing words of the resolution, to confirm the title of Zacher

as receiver, and to quitclaim every claim that the company might have to any remnant of ownership in any of its property, if the effect of the judgment appointing the receiver, with the powers and authority given him, had left any remaining. It does not seem to have been, nor in any way to have been intended to be, an independent assignment for the benefit of creditors. The resolution passed by the stockholders authorized nothing of the kind, and the deed itself, by its terms and by being executed to the receiver in his official capacity, excludes any such idea as that it was executed as an original voluntary assignment for the benefit of the creditors of the company. It was executed in aid of the receivership. The receiver gave bond and entered upon the discharge of his official duties. Meantime, in the suit pending in this court of C. P. Huntington against the Chesapeake, Ohio & Southwestern Railway Company, etc., to foreclose a mortgage upon the property of that railway company, certain receivers had been appointed, and the Fidelity Trust & Safety-Vault Company, as assignee of the McDonald Brick Company, on May 11, 1894, was permitted by this court to attach, in the hands of its receivers in this case, a sum probably sufficient to satisfy the judgment which the said trust company, as such assignee, had recovered in a state court against the Newport News & Mississippi Valley Company for $20,000, besides interest and costs. The writ of attachment by which this was done had issued from the state court, but the order of this court in this case, declaring how the matter should be judicially settled between the claimants of this fund, was in the following language:

"And it further appearing to the court that a lien is claimed upon these amounts by James Crouch, under a process of garnishment, and the Fidelity Trust & Safety-Vault Company being assignee of the McDonald Brick Company under process of garnishment, and that there is pending another application for a process of garnishment, and that this money is claimed by Edmund Zacher as assignee and as receiver of the N. N. & M. V., it is ordered that these amounts, out of whatever fund they may be paid, shall remain in the registry of the court until these parties can, by proper pleadings or otherwise, determine their several rights to the fund."

Matters standing thus, Edmund Zacher, the receiver in the Connecticut case, filed herein his intervening petition, seeking the judgment of this court that the fund thus attached and remaining in the registry of this court should be ordered sent to Connecticut to be administered in the proceedings there, instead of being permitted to remain to be applied in satisfaction of the judgment of the assignee of the McDonald Brick Company, the attaching creditor. This is resisted by the latter, who insists that the fund should be retained in Kentucky, where its debt was created under contract, where it was reduced to judgment, where the attachment issued, and where the creditor resides; that creditor never having in any way submitted to the jurisdiction of the Connecticut court. The question of law involved is supposed to turn somewhat, if not altogether, upon whether the suit in Connecticut, wherein Zacher was appointed receiver, is a proceeding in invitum, or a voluntary proceeding upon the part of the Newport News & Mississippi Valley corporation. It is supposed, if the latter is the proper view of the

question, that the prayer of the intervener must be granted; otherwise, not.

While the court has not been able to lay its hands upon any decision accurately differentiating the two, it is probable that no better or more concrete illustration or test by which to determine the difference can be found than that suggested by the national bankrupt law. An involuntary petition would certainly constitute a proceeding in invitum, while a voluntary petition would not. And this would be so whether the insolvent debtor made no resistance, or but little resistance, or the most active and energetic resistance. The degree of intensity of his opposition to the action of his creditors, or of his reluctance to be adjudged a bankrupt, can in no way affect this question. The character of a proceeding in invitum is ineffaceably impressed upon it by its form. The court will not measure nor inquire into the degree of the defendant's reluctance or willingness to have the judgment prayed for rendered. So here the corporation to be wound up did not seek to wind itself up by any suit brought in its own name. That relief was sought by a stockholder in an adversary suit, the judgment in which, it is supposed, seized and sequestrated the defendant's assets for the benefit of its creditors. I say "supposed," for that appears to be the necessary object and purpose of a suit that would otherwise be futile, though the statute itself, so far as exhibited to the court, is somewhat obscure. In form, the suit is adversary and involuntary, and it is not for this court to inquire whether the corporation was more or less willing or unwilling that the prayer of the complaint should be granted. The plaintiff had appealed to the court, and, if he had a good cause of action, the relief must necessarily be granted, whether resisted by defendant or not. This fact, and the form of the suit, settles its character. That the relief prayed for in it was judicially granted by the Connecticut court is averred by the intervener in his petition.

It is somewhat curious that a copy of the complaint of C. P. Huntington, in the Connecticut suit, is not filed in this case, and is not before the court on this hearing, but it may be assumed that it states a cause of action by Huntington. This assumption, and the further one that it was admitted or proved to be true, will be indulged, whether he ever actually knew of the suit filed in his name or not. If the effect of the testimony of Mr. Harrison, the attorney in that suit, on that subject, be regarded as showing that the Connecticut suit was utterly unauthorized by Huntington, and for that reason, possibly, impeachable for fraud and collusion, then the relief prayed for by Zacher should not be granted, for the reason that the judgment under which he claims might be in condition to be set aside as having been obtained in a suit which was wholly unauthorized by the plaintiff, in whose name it was instituted. The court, however, prefers to regard that suit as having been brought by Huntington's tacit or express authority, even if the facts be forgotten. Any other conclusion would possibly render the proceedings scandalous. The court prefers to regard the receivership as having been granted by a valid exercise of the power of the court

in a cause in which it had jurisdiction of the parties, plaintiff and defendant, rather than to treat it as having been obtained upon the false pretense that a suit was brought by Huntington's authority, when in fact it was not, and that the use of his name was an imposition upon the state court. These being the conclusions of the court up to this point, it seems to result that it must be governed, in the decision of this case, by the late ruling of the supreme court of the United States in the case of Trust Co. v. Dodd, 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835. There having been in fact no voluntary assignment either made or authorized by the corporation for the benefit of creditors, but only an assignment, worked out through the operation of the judicial decree of the court in Connecticut under the statute of that state, it is precisely equivalent to a statutory assignment by the company under the insolvent laws of Connecticut regarding corporations, and, if so, the following language of the supreme court in the case just referred to must be conclusive. On page 629, 173 U. S., page 546, 19 Sup. Ct., and page 837, 43 L. Ed., Mr. Justice Brown, in delivering the opinion of the court, after stating the rule in cases where there is a voluntary or common-law assignment, said:

"But the rule with respect to statutory assignments is somewhat different. While the authorities are not altogether harmonious, the prevailing American doctrine is that a conveyance under a state insolvent law operates only upon property within the territory of that state, and that with respect to property in other states it is given only such effect as the laws of such state permit, and that, in general, it must give way to claims of creditors pursuing their remedies there. It passes no title to real estate situated in another state. Nor, as to personal property, will the title acquired by it prevail against the rights of attaching creditors under the laws of the state where the property is actually situated."

Many authorities were cited in support of the proposition thus announced, and given approval and effect in that case.

It does not seem to be necessary to pass upon the other questions raised by counsel, though, if the court should be in error in concluding that this case falls within the principles announced by the supreme court in the case just cited, it might be well worthy of inquiry whether the conduct of this corporation in Connecticut was not such as to bring this case within the rules laid down by the court of appeals of Kentucky in the case of Bank v. Payne, 86 Ky. 446, 8 S. W. 856. Especially might this be the case if Huntington's name was wrongfully used.

But, without going into that, the court is of opinion that the intervening petition of Edmund Zacher, receiver, should be dismissed, with costs, and that the funds attached in this case, and now within the registry of the court, should be applied to the payment of the debt of the attaching creditor. Should any of the fund remain after satisfying in full the demand of the attaching creditor, it may possibly be that it should be paid to the intervener; but that question is reserved, to be determined upon his further intervention.