## SCHOENWALD et al. v. McDONALD et al.

### (First Division.   Juneau.   January 3, 1916.)

### No. 1284–A.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⟳199—FOREIGN ASSIGN-
   MENTS—CONFLICTING JURISDICTION—COMITY.

     A voluntary assignment for the benefit of creditors should be
   given force in another state or territory, as to property therein
   situate, except so far as it comes in conflict with the rights of
   local creditors or with the public policy of the state or territory
   in which it is sought to be enforced.   Comity does not require
   any government to give effect to such assignment (for the benefit
   of creditors) when it shall impair the remedy or lessen the se-
   curities of its own citizens.

2. CORPORATIONS ⟳550(2)—ASSIGNMENT FOR THE BENEFIT OF CREDI-
   TORS—COMMON-LAW ASSIGNMENT.

     To constitute a voluntary common-law assignment for the
   benefit of creditors, by a corporation, it must be shown that it
   was the act of the company.   Where no resolution of the board
   of directors authorizing the assignment was passed, nothing done
   to show that it has ever been even discussed at any meeting, or
   that any meeting of the board was ever held for that purpose,
   nor that its making has ever since been ratified, it does not
   constitute a voluntary common-law assignment.

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⟳336—ATTACHMENTS—
   PRIORITIES—RECEIVERS.

     The property of a Minnesota corporation engaged in business
   in Alaska was placed in the hands of a receiver in the state of
   Washington at the suit of a creditor.   The court afterwards
   made an order directing the company to execute a general as-
   signment, which it did, for the benefit of all its creditors.   The
   defendant McDonald, without notice of these proceedings at-
   tached some of the property of the company in Alaska for a debt
   due him and contracted there.   On the question of the superiority
   between the Washington receiver and the local attaching creditor,
   *held* that, since both the receivership and assignment were in
   invitum and compulsory, neither has any extraterritorial effect
   as against attaching resident creditors in Alaska.   Judgment
   for defendant.

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⟳199—FOREIGN—PAR-
   TIES.

     The true principle is that the assignee in an assignment in
   invitum is on no other or better footing than the assignor him-
   self in regard to the property or assets in other jurisdictions.
   He takes subject to every equity and subject to the remedies pro-

---

⟳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vided by the laws of the foreign jurisdiction, and when permitted to sue therein it is not as an assignee having an interest, but as a representative of the assignor.

5. ESTOPPEL ⬤⇒56—KNOWLEDGE OF ATTACHMENT.

An Alaska creditor is not barred from attaching his debtor's property merely because he and his attorney have been informed that his debtor's property has been or will be placed in a receiver's hands in the state of Washington, and the company has been ordered to make an assignment for the benefit of creditors in the foreign jurisdiction.

The complaint alleges in substance as follows: Appointment September 16, 1914, by a Washington court, of S. T. Hills and E. Schoenwald as receivers of the Pacific Coast & Norway Packing Company, a Minnesota corporation; general assignment October 26, 1914, by said company to said Schoenwald and Hills, as receivers and assignees, of all the company's property in the territory of Alaska (including the gasoline boat Bernice), "voluntarily and of its own free will and accord," which said boat was and always (so far as material to this case) had been in the First Division of Alaska, qualification of said Schoenwald and Hills, and immediate taking possession of said boat by them; attachment by writ from Alaska court January, 1915, of said boat by McDonald, who knew of and assented to said assignment.

The answer is substantially as follows: Denies all the material allegations of the complaint except the attachment, denies a capacity of plaintiffs to sue, denies jurisdiction of this court, and sets up the attachment, and alleges that McDonald is and was a resident creditor.

The case was tried to the court without a jury, and at the conclusion of plaintiffs' case defendant rested, and both sides demanded judgment.

The evidence shows that the complaint, on which the receiver was appointed by the Washington court, was one brought by Roy W. Nevin against the Pacific Coast & Norway Packing Company, alleging that plaintiff in said cause was a creditor of the defendant corporation, and that the said corporation—

"is financially embarrassed and cannot meet its obligations as they mature. Suits have been begun against it, and, if its property is seized, at forced sale sufficient cannot be realized to meet its obliga-

⬤⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tions.   Although defendant's assets now exceed its liabilities, said defendant is in immediate danger of insolvency."

The prayer is for the appointment of a receiver of the property, assets, and business of the defendant, to control and manage the same, and to continue the business of said corporation for the benefit of all its creditors, and for judgment against said defendant in the amount of $1,284, with plaintiff's costs and disbursements herein.   (Plaintiffs' Exhibit A.)

The evidence further shows that to this complaint an answer was filed by the defendant corporation, denying the ownership by plaintiff therein of any claim against it, and praying "that the complaint herein be dismissed, and for its costs and disbursements herein."   (Plaintiff's Exhibit B.)

In said cause the Washington court made the following order:

"Upon the verified complaint herein, and after argument of counsel for the plaintiff and the defendant, Pacific Coast & Norway Packing Company, it appearing to the court that said defendant is in embarrassed financial circumstances and cannot meet its obligations as they mature, that suits have been begun against it, and, if its property is seized and sold at forced sale, sufficient will not be realized to meet its obligations, and that said defendant, though its assets now exceed its liabilities, is in imminent danger of insolvency:

"It is hereby ordered that E. Schoenwald, of Seattle, King county, Washington, be, and he is hereby, appointed receiver in this action of all the property, assets, and business of the defendant, upon his filing an undertaking executed to the state of Washington in the penal sum of $20,000, with a sufficient surety to be approved by the court, conditioned for the faithful discharge of the duties of such receiver in the usual form.

"It is further ordered that the said receiver be, and he is hereby, empowered to take possession of and to do all things necessary to the preservation of the property and assets of the defendant, and continue the business of said defendant, with full authority to do all things necessary thereto, until the further order of the court, and shall from time to time report to the court his doings hereunder.

"Done in open court this September 18, 1914.

"Boyd J. Tallman, Judge."

(Plaintiffs' Exhibit C.)

The evidence further shows that immediately thereafter said receiver qualified and took possession of said assets, and that Hills was afterwards appointed coreceiver, and duly qualified as such.

The evidence further shows that afterwards, to wit, on the 26th day of October, 1914, the said court made an order di-

recting the company to execute a general assignment, and that the company did so by a conveyance, reciting that it was executed "in pursuance of said order." (Plaintiffs' Exhibit K.)

The evidence further shows that defendant McDonald was a creditor resident in Alaska (cross-examination, deposition of Steberg, president); but it does not show that he knew that said assignment had been made or consented or acquiesced in the receivership and assignee proceedings, although it does appear that he had been informed that such an assignment was going to be made.

Winn & Burton, of Juneau, for plaintiffs.

Gunnison & Robertson, of Juneau, for defendants.

JENNINGS, District Judge. It will thus be seen that the contest is as to the superiority of right between a foreign receiver and assignee in possession of the debtor's property in this territory, and a local creditor attaching said property in the courts of this territory subsequent to the said appointment of said receiver assignee.

Plaintiffs' position substantially, is this:

(1) That by comity they have a standing in this court;

(2) That by virtue of being assignees and vested with the title, they have a standing in this court.

Defendant controverts both contentions.

1. As to comity: It might be remarked in passing that such a receivership as has here been constituted by the Washington court, to wit, a receivership to extricate from financial embarrassment and difficulties with creditors, a purely private, solvent, corporation, is unknown to the Alaska law, although there seems to be a statute in the state of Washington authorizing such a proceeding.

I can see no occasion for the application here of the doctrine of comity. As said by Mr. Justice Day, in rendering the opinion of the Supreme Court in Disconto v. Umbreit, 208 U. S. on page 579, 28 Sup. Ct. on page 340 [52 L. Ed. 625]:

"The doctrine of comity has been the subject of frequent discussion in the courts of this country when it has been sought to assert rights accruing under assignments for the benefit of creditors in other states as against the demands of local creditors, by attachment or otherwise in the state where the property is situated. The cases were reviewed by Mr. Justice Brown, delivering the opinion of the court in Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624 [19 Sup. Ct. 545, 43 L. Ed. 835], and the conclusion reached that vol-

untary assignments for the benefit of creditors should be given force in other states as to property therein, situate except so far as they come in conflict with the rights of local creditors, or with the public policy of the state in which it is sought to be enforced; and, as was said by Mr. Justice McLean, in Oakey v. Bennett, 11 How. 33, 44 [13 L. Ed. 593], 'national comity does not require any government to give effect to such assignment (for the benefit of creditors) when it shall impair the remedies or lessen the securities of its own citizens.' "

2. Plaintiffs contend that—

(a) The assignment in question is a common-law assignment for the benefit of creditors;

(b) A common-law assignment for the benefit of creditors good where made is good everywhere.

It seems to be conceded that a safeguard for resident creditors exists in the case of foreign statutory assignments, but its existence in the case of a common-law assignment is denied.

In this connection, then, it is to be considered whether or not this is a common-law assignment.

This court cannot well see how it can be considered a common-law assignment, when it is not shown to have been the act of the company. No resolution of the board of directors authorizing the assignment is shown—nothing to show that it has ever been even discussed at any meeting, or that any meeting of the board was ever held for that purpose, nor that its making has ever been ratified. Only this appears—that the president and some of the directors and the attorneys have informally and individually agreed that the assignment ought to be made. That this would not be sufficient to validate an assignment is well borne out by the authorities.

2 R. C. L. 649: "Unless otherwise provided by statute, the general rule is that a corporate assignment must be executed by the board of directors, or a quorum thereof, at a meeting duly called for that purpose, or be executed by an officer of the corporation, duly authorized by a resolution of the board of directors. The consent of stockholders is entirely unnecessary. It seems that the action of the directors must be joint, and consequently an invalid assignment cannot be later validated by the ratification of a majority of the directors acting individually. It is universally held that the power to assign the property of a corporation is not incident to any corporate office, and an assignment made by any officer without being duly authorized by the board of directors is invalid, and this is true even when the officer assigning owns a large majority of the stock, and is in complete control of the corporation."

See cases cited in notes 5, 6 and 7, particularly Calumet Paper Co. v. Haskell, 144 Mo. 331, 45 S. W. 1115, 66 Am. St. Rep. 425, where the court say:

" 'Where a creditor elects to disregard the assignment and attaches the property of the corporation, and thereupon a contest arises between him and the assignee, the question is one which concerns the title of the assignee to the property, and it is properly drawn in question in such a proceeding. It is not a question where, in theory of law, the validity of the assignment is subject to collateral attack. But, if it were, the rule would be the same; since such an assignment is not a judicial proceeding, and in every case where any person asserts rights under it as against a stranger, the burden is upon him to show at least an assignment valid on its face, and the other party may show that it was invalid by reason of extrinsic facts, as that it was unauthorized by a legal meeting of the directors.' 5 Thompson on Corporations, § 6478. 'When such an assignment has not been validated by acquiescence or laches, it may obviously be impeached, either by creditors or stockholders, on the ground that it was not made by the directors at a meeting duly convened; that is to say, on the ground that it was not made by the board of directors at all, for the acts of the directors are of no validity unless they are regularly assembled and acting as a board, and unless the proper quorum has concurred in the action which is challenged.' 5 Thompson on Corporations, § 6479; Doernbecher v. Columbia City Lumber Co., 21 Or. 573 [28 Pac. 899, 28 Am. St. Rep. 766]."

In the case at bar there has not even been a resolution of ratification.

It cannot be denied that there is a substantial difference in the respective effects of the two kinds of assignments, but that difference seems to turn, not so much upon the question of the rights of resident creditors thereunder, as upon the question as to whether or not there is any statute or policy in the given state forbidding or regulating such assignments.

The Supreme Court of the United States, in Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624, 628, 19 Sup. Ct. 545, 546 (43 L. Ed. 835), differentiates as follows:

"The operation of voluntary or common-law assignments upon property situated in other states has been the subject of frequent discussion in the courts, and there is a general consensus of opinion to the effect that such assignments will be respected, except so far as they come in conflict with the rights of local creditors, or with the laws or public policy of the state in which the assignment is sought to be enforced. The cases in this court are not numerous, but they are all consonant with the above general principle [citing authorities]. But the rule with respect to statutory assignments is somewhat different. While the authorities are not altogether harmonious,

the prevailing American doctrine is that a conveyance under a state insolvent law operates only upon property within the territory of that state, and that with respect to property in other states it is given only such effect as the laws of such state permit, and that, in general, it must give way to claims of creditors pursuing their remedies there. It passes no title to real estate situated in another state. Nor, as to personal property, will the title acquired by it prevail against the rights of attaching creditors under the laws of the state where the property is actually situated [citing authorities]."

According to this, the rights of local creditors are safeguarded, whether the assignment be a common-law assignment or a statutory assignment.

It seems to the court that whether the assignment in question be called a common-law or a statutory assignment is not significant, unless the term "common-law assignment" be taken to mean the same as voluntary assignment, and the term "statutory assignment" is taken as synonymous with involuntary assignment, for the test is not the name of the assignment, but its nature, as being invitum (voluntary) or in invitum (compulsory).

The conclusion arrived at is this, to wit: The receivership, having been constituted in an adversary proceeding (a suit by a creditor), is itself in invitum; the assignment, having been made by the order of the court in aid of this in invitum receivership, is likewise in invitum. The order of the court must be taken as the source of and authority for the assignment—certainly so, when that is the only authority shown. The fact that some, perhaps all, of the officers and attorneys of the corporation, were more or less agreeable to, or even instigated, the receivership and assignment, is unimportant, when it is considered that the order of the court recites:

"This matter coming on to be heard upon the application of E. Schoenwald and S. T. Hills, as receivers of the Pacific Coast & Norway Packing Company, for an order directing said company by its duly authorized officers to convey forthwith to said receivers all its real property in the territory of Alaska, and to transfer to them all personalty there situated, C. O. Steberg, president of said company, being present and consenting to such order, and it appearing to the court that said conveyance and transfer is necessary to the successful conduct of the receivership:

"It is hereby ordered that the said Pacific Coast & Norway Packing Company convey to said receivers all its title to real estate situated in the territory of Alaska and transfer to said receivers all its personalty there situated, and said C. O. Steberg, as president of said

company, is hereby directed to execute and deliver to said receivers a sufficient deed to said real estate and a bill of sale of said personalty"

—and when it is further considered that the assignment purports on its face to have been executed "pursuant to the order of said court" in said cause and is particular to state that it is to Schoenwald and Hills "as receivers and not otherwise." (Plaintiffs' Exhibit K.)

A similar question arose in the case of Huntington v. C. & O. Ry., reported in 98 Fed. 459. In that case there was no prior resolution of the board of directors authorizing the assignment, although after the court had appointed a receiver and directed the transfer, and the transfer had been made, there was a resolution ratifying the assignment. But the court held that the assignment took its character from the action of the court, not from the action of the directors. The court say (98 Fed. 463):

"In form, the suit is adversary and involuntary, and it is not for this court to inquire whether the corporation was more or less willing or unwilling that the prayer of the complaint should be granted. The plaintiff had appealed to the court, and, if he had a good cause or action, the relief must necessarily be granted, whether resisted by defendant or not. This fact, and the form of the suit, settles its character."

And speaking of the ratified assignment (98 Fed. 461, 462):

"It was the evident purpose of the stockholders, as appears from the closing words of the resolution, to confirm the title of Zacher as receiver, and to quitclaim every claim that the company might have to any remnant of ownership in any of its property, if the effect of the judgment appointing the receiver, with the powers and authority given him, had left any remaining. It does not seem to have been, nor in any way to have been intended to be, an independent assignment for the benefit of creditors. The resolution passed by the stockholders authorized nothing of the kind, and the deed, itself, by its terms and by being executed to the receiver in his official capacity, excludes any such idea as that it was executed as an original voluntary assignment for the benefit of the creditors of the company. It was executed in aid of the receivership."

And concluding (98 Fed. 464):

"There having been in fact no voluntary assignment either made or authorized by the corporation for the benefit of creditors, but only an assignment, worked out through the operation of the judicial decree of the court in Connecticut under the statute of that state, it is precisely equivalent to a statutory assignment by the company under the insolvent laws of Connecticut regarding corporations."

5 A.R.—29

See, also, Zacher v. Fidelity Trust & Safety Co., 109 Ky. 441, on page 451, 59 S. W. 493, on page 495, where the court say:

"The relief was sought by a stockholder and creditor. The corporation was made a defendant. The judgment, upon its face, did not purport to be a consent judgment, and this court will not inquire whether the corporation itself instigated the granting of the relief sought by the creditor who instituted the suit. There was in fact no voluntary or common-law assignment, for the benefit of all of the creditors equally, made or authorized by the corporation, such as this court has held to be binding upon creditors resident in this state. On the contrary, we think the proceeding in Connecticut was a statutory one for winding up the affairs of an insolvent corporation under the laws of that state, and is operative as to property in Kentucky only so far as the courts in this state choose to respect it, and that so far as appellant, as receiver or assignee, took title to such property, he took it subservient to appellee's attachment."

On this point defendant cites the case of Ward v. Connecticut Pipe Company, 71 Conn. 345, 41 Atl. 1057, 42 L. R. A. 706, 71 Am. St. Rep. 207. It is true that the distinguished judge who rendered the decision in that case held that the assignment was voluntary, although ordered by the court. In that case, however, there had been a vote of the directors authorizing the assignment, and the receivership proceeding was by the shareholders themselves, under a statute of Connecticut which "authorizes the superior court as a court of equity to wind up the affairs of any such corporation and to dissolve it on the complaint of shareholders." In the case at bar there is no evidence of any corporate action, and the receiver was appointed in an adversary proceeding—that is, at the suit of a creditor. Had the Connecticut case been similar to the case at bar, this language of Judge Baldwin would have governed, to wit:

"If the assignment by the defendant to the receiver had been forced upon it at the instance of a creditor, this might have been an in invitum proceeding"—citing Catlin v. Silver Plate Co., 123 Ind. 477, 24 N. E. 250, 8 L. R. A. 62, 18 Am. St. Rep. 338.

And then, too, this Connecticut case did not involve the rights of resident creditors.

The question here is as between a resident creditor and a foreign assignee, and the cases cited by plaintiff are, with one or two exceptions, cases between a foreign creditor and a foreign assignee, or the actual point decided in said cases is

entirely foreign to the subject here under discussion, or the assignment was clearly not in invitum. For instance:

Oliver v. Clarke, 106 Fed. 402, 45 C. C. A. 360: This was not a controversy wherein any rights of creditors were involved. It was a suit in Texas about the title to land in Texas. Clarke deraigned his title from a man by the name of Penniman; Clarke was the receiver of the firm which had succeeded to Penniman's interest, and which claimed the land under a vendor's lien held by Penniman. Under the laws of Texas a vendee of land on which there had been reserved a vendor's lien does not obtain the title; the title remains in the vendor, the vendee taking only an equitable interest. 106 Fed. page 403, middle, 45 C. C. A. 360. The United States court simply held that, as Penniman was, under the laws of Texas, the legal owner, so also was his successor, the American Savings & Loan Association, for whom Clarke was receiver, and who had acquired the land from Penniman. Clarke also had a deed direct from Penniman, and as such owner Clarke was entitled to maintain his suit for the land, which was his. The court held (and certainly properly held) that the mere fact that the owner was also a receiver did not deprive him of the right to wage his suit for the protection of his title to the land.

Surely the courts of a state in which property is situated will not confer upon one person the property of another simply because the one is, and the other is not, a resident of that state; but a state may with propriety say to the foreigner owning property within its borders (which property is entitled to and receives the protection of the laws of the state):

"You have made agreements, done business, contracted debts, and traded with our citizens on the strength of the availability of your property to answer for your debts and obligations, and, having so dealt with our citizens, our courts will not recognize a decree of the courts of your domicile commanding you to remove those assets from this jurisdiction, or destroy their availability, or reduce our citizens to the expense and inconvenience of submitting their claims to a jurisdiction perhaps thousands of miles away and there proving them, for the first duty of a state is to its own citizens."

There is nothing unjust or oppressive in this.

Mayer v. Hellman, 91 U. S. 500, 23 L. Ed. 377, simply holds that under the Bankruptcy Act of 1867 (14 Stat. 517, c. 176) an assignee in bankruptcy cannot dispossess an assignee under a state insolvent law of property conveyed to him by an in-

solvent more than four months prior to the filing of the petition in bankruptcy. As the statutory assignment was "executed six months before the petition in bankruptcy was filed, it is, to the assignee in bankruptcy, a closed proceeding."

In re Farrell, 176 Fed. 505, 100 C. C. A. 63, is exactly to the same effect as Mayer v. Hellman. In fact it is said:

"These decisions, especially the first [Mayer v. Hellman, supra] must rule the case at bar."

Yost v. Graham, 50 W. Va. 199, 40 S. E. 361: This case holds that the law of the actual situs of personal property protects the claims of creditors domiciled there against transfers by operation of law, and is, if anything, an authority against the citer.

Witters v. Globe Bank, 171 Mass. 425, 50 N. E. 932: This was a suit brought in Massachusetts by a creditor resident in Vermont, and the court was particular to limit its ruling to cases where no resident creditor was concerned, saying on page 437 of 171 Mass., on page 933 of 50 N. E.:

"Whatever may be true of such an assignment when credits of the assignor are attached here by inhabitants of Massachusetts, we perceive no good reason why we should protect, against the rights of the assignee, an attachment made by an inhabitant of Vermont after the assignment."

Pitman v. Marquardt, 20 Ind. App. 431, 50 N. E. 894: The controversy was in Indiana between a Kentucky assignee and an Illinois creditor.

Roberts v. Norcross, 69 N. H. 533, 45 Atl. 560, involved no rights of a local creditor. The assignee was a resident of Massachusetts, the attaching creditor was a resident of Maine. The forum was the New Hampshire court.

Carter Battle Grocer Co. v. Jackson, 18 Tex. Civ. App. 353, 45 S. W. 615: This seems to hold with the plaintiff.

Mabon v. Ongley Electric Co., 156 N. Y. 196, 50 N. E. 805, simply decided that:

"A receiver of a foreign corporation appointed by a court of the foreign state cannot maintain an action in this state against such corporation as sole defendant, for the sole purpose of obtaining the appointment in this state of an ancillary receiver."

It is true that the court said by way of dictum:

"If the title is by virtue of a voluntary conveyance or transfer, it is sustained as against all, including even domestic creditors."

But it also said by way of dictum:

"But, if it [the assignment] depends on a foreign statute or judgment, it is sustained against all except domestic creditors."

Fenton v. Edwards, 126 Cal. 43, 58 Pac. 320, 46 L. R. A. 832, 77 Am. St. Rep. 141: This case, too, was one in which the rights of local creditors were not involved, and, after reviewing various authorities, the opinion concludes as follows:

"The general rule is that a voluntary assignment of personal property, valid at the place where it is made, is valid everywhere and wherever the property may be situated, unless such transfer interferes with the domestic laws, policy, or rights of the citizens of the state in which the property is situate. Burrill, Assignm. (6th Ed.) p. 359, and cases cited in note 5."

Atherton v. Ives (C. C.) 20 Fed. 894 (Ky.), was a decision by a Circuit Court 32 years ago, and cannot prevail over the later decisions of the Kentucky court and of the Supreme Court of the United States.

34 Cyc. 493: If only the first paragraph is read, it would appear to be an authority in favor of plaintiff; but in the light of the evidence in this case, and of the section as a whole, the text is against the plaintiff. The section entire is as follows:

"The title of a receiver by virtue of a voluntary conveyance or assignment is sustained as against all, including even domestic creditors, and the receiver of a corporation which assigns to him all its property has a right to appear and litigate for the protection of his claim as assignee; but rights of creditors to proceed in a state other than that in which the receiver was appointed are not affected by involuntary assignments executed under the orders of the appointing court, and such receiver will not be recognized to defeat the preference of such creditors."

Weider v. Maddox, 66 Tex. 372, 1 S. W. 168, 59 Am. Rep. 617, refers to voluntary assignments only. The decision says (66 Tex. on page 376, 1 S. W. on page 170 [59 Am. Rep. 617]):

"If it be an assignment under a compulsory statute, it exists alone by force of the law, which cannot operate extraterritorially. The law is compulsory if it requires the assignment to be made even at the request of creditors."

First Nat. Bank v. Walker, 61 Conn. 154, 23 Atl. 696, refers to voluntary assignments only.

This court, holding that the receivership and assignment were in invitum, likewise holds that neither one (or both) has any extraterritorial effect as against attaching resident creditors. On the latter holding the law is well settled. To even cite the numerous authorities on this point would fill pages of type-written matter, and to review even a few of them would extend this opinion to an unconscionable length. Out of the many, I have selected the case of Catlin v. Wilcox Silver Plate Co., 123 Ind. 477, 24 N. E. 250, 8 L. R. A. 62, 18 Am. St. Rep. 338, as being the fullest, most luminous, and most nearly apposite; and because of those facts, and of the further fact that it is cited by the Supreme Court (Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835), and frequently by other courts, I quote from it somewhat at length.

There the facts were as follows: C. and D., of Chicago, were indebted to X., of Chicago, also to W., of Connecticut. B., of Indiana, was indebted to C. and D. Catlin was receiver of C. and D. by appointment of the Chicago court, and C. and D. assigned to Catlin by order of said court. Subsequent to said assignment, W., in the Indiana court, attached property in Indiana. Catlin asserted superior right as receiver and assignee. The question presented was:

"Are the rights of nonresident attaching creditors in Indiana courts to property in Indiana paramount to those of the receiver (and assignee) appointed by the Chicago court prior to the issuance of the attachment?"

The court answered in the affirmative. It will be noted that that was a controversy between nonresidents of Indiana, while the case at bar is between a resident and a nonresident. It would seem, therefore, that the Indiana court would have rendered a more emphatic affirmative, had the case before it been exactly like this. Says that court in that case:

"While it has been held that a court may appoint a receiver, and authorize him to take possession of property in a foreign jurisdiction, the doctrine is universal that the appointment confers no legal authority which the receiver can exert over the property without the aid of the courts in whose jurisdiction it is found. The appointment, of its own force, gives him the right to take possession of the property; but it confers upon him no power to compel the recognition of that right outside the jurisdiction of the court making the appointment. High, Rec. §§ 47, 241. While there are authorities of great weight which seem to hold that a receiver appointed in one jurisdic-

tion will not be permitted to maintain a suit in a foreign state, the generally prevailing doctrine, upon which all the decisions seem to be harmonious, is that, upon the principles of comity, the courts or the jurisdiction in which the property or fund is situate will recognize the rights of the receiver so far as to aid him in reducing it to possession, unless to do so would in some way violate the local policy, or interfere with the rights of resident creditors. Metzner v. Bauer, 98 Ind. 425, and cases cited; Beach, Rec. §§ 16–19, 682; Bank v. McLeod, 38 Ohio St. 174. But the recognition of well-established principles of comity and courtesy between courts of different jurisdiction is one thing, while the rights of resident or other attaching creditors, who are seeking to avail themselves of legal proceedings, authorized by statutes of the state, for the appropriation of a fund belonging to a nonresident debtor, must be determined upon altogether different principles. As has, in effect, been said, courts are prepared to extend comity where there is no reason to the contrary, especially if there is no interest of their own citizens, or of the citizens of another state who are asking the protection of their laws, injuriously affected by such recognition. Paine v. Lester, 44 Conn. 196 [26 Am. Rep. 442]; Milne v. Moreton, 6 Bin. [Pa.] 361 [6 Am. Dec. 466]. The rule may be considered as established that a receiver may invoke the aid of a foreign court in obtaining possession of property or funds within its jurisdiction to which he is entitled, but aid will only be extended as against those who were parties, or in some way in privity with the proceedings, in the court in which his appointment was made, or who are in possession of the property or fund to which the receiver has a right, and not against creditors of a nonresident debtor who are seeking to subject the property or fund to the payment of their debts by proceedings duly instituted for that purpose. Accordingly, in Hurd v. City of Elizabeth, 41 N. J. Law, 1, the court said: 'That the officers of a foreign court should not be permitted, as against the claims of creditors resident here, to remove from this state the assets of the debtor, is a proposition that appears to be asserted by all the decisions.' The principle upon which the decisions rest is that it is the policy of every government to retain within its control the property of a foreign debtor until all domestic claims have been satisfied, and hence the right of the receiver of a foreign court to sue, which is allowed only upon considerations of comity, will be denied when it comes in conflict with the interests of domestic creditors. 'We decline,' said the court in Runk v. St. John, 29 Barb. [N. Y.] 585, 'to extend our wonted courtesy so far as to work detriment to citizens of our own state who have been induced to give credit to the foreign insolvent.' Bagby v. Railroad Co., 86 Pa. 291; Insurance Co. v. Wright, 55 Vt. 526; Thurston v. Rosenfield, 42 Mo. 474 [97 Am. Dec. 351]; Willitts v. Waite, 25 N. Y. 577. It follows, hence, that the available legal authority of a receiver is coextensive only with the jurisdiction of the court by which he was appointed, when the right of precedence or priority of creditors is asserted in respect to property or funds of a nonresident debtor which the receiver has not yet induced to possession. Hunt v. Insurance

Co., 55 Me. 290 [92 Am. Dec. 592]; Warren v. Bank, 7 Phila. [Pa.] 156; Booth v. Clark, 17 How. 322 [15 L. Ed. 164]; State v. Railroad Co., 15 Fla. 202; Insurance Co. v. Needles, 52 Mo. 17; Taylor v. Insurance Co., 14 Allen [Mass.] 353.

"It is said, however, that, as Clapp & Davies were residents of the state of Illinois at the time the receiver was appointed, the debt due them from Bagley & Oberreich was within the jurisdiction of the superior court of Cook county, upon the principle that the domicile draws to it the personal property and choses in action of the owner, wherever they may be situate. Hence the contention is that, as the appointment of the appellant as receiver was followed by a general deed of assignment, valid in the state of Illinois, it must be regarded as valid here, and as divesting Clapp & Davies of all title or interest in the debt in controversy after the date of the assignment. It is, of course, well settled that personal property is transferable according to the law of the owner's domicile, and that a voluntary assignment or transfer, made without compulsion or legal coercion, is to be governed everywhere by that law, unless the contract by which the transfer was made is limited or restrained by some policy or positive enactment of the state in which the property is situate, or unless it affects citizens of the latter state injuriously. Iron Works v. Warren, 76 Ind. 512 [40 Am. Rep. 258]; Martin v. Potter, 11 Gray [Mass.] 37 [71 Am. Dec. 689]; Weider v. Maddox, 66 Tex. 372, 1 S. W. 168 [59 Am. Rep. 617]; Warner v. Jaffray, 96 N. Y. 248 [48 Am. Rep. 616]; Green v. Van Buskirk, 7 Wall. 150 [19 L. Ed. 109]; Askew v. Bank, 83 Mo. 366 [53 Am. Rep. 590]; Law v. Mills, 18 Pa. 185; Burrill, Assignm. § 301; Story, Confl. Laws, §§ 383–390. 'The voluntary transfer of a chattel by the debtor, if it be not forbidden in other respects by the law at the place of the situs, is to be as much regarded there or elsewhere as it would be at the place of the domicile.' Lowry v. Hall, 2 Watts & S. [Pa.] 131 [38 Am. Dec. 495]; Smith's Appeal, 104 Pa. 381; Chafee v. Bank, 71 Me. 514 [36 Am. Rep. 345]. Such an assignment will not be upheld, however, if it contravenes the policy of the law of the place where the property is situate. Guillander v. Howell, 35 N. Y. 657; Faulkner v. Hyman, 142 Mass. 53, 6 N. E. 846; Moore v. Church, 70 Iowa, 208, 30 N. W. 855 [59 Am. Rep. 439]; In re Waite, 99 N. Y. 433, 2 N. E. 440.

"The principles above stated are applicable only to transfers or assignments of property which rest essentially on contract, and are voluntary in the sense that they are the product of a will acting without legal compulsion. Property in a foreign state that has passed from an assignor to an assignee by a voluntary deed, and not by proceedings in invitum, by process of law, is distinguished from like property in the hands of a receiver by operation of law, or by an assignment made under legal compulsion. Assignments of the latter class are held inoperative upon property not situate within the territory over which the laws that make, or compel the debtor to make, them have dominion. Rhawn v. Pearce, 110 Ill. 350 [51 Am. Rep. 691]; Smith's Appeal, 104 Pa. 381; Weider v. Maddox, supra. In-

voluntary assignments which are made under foreign insolvent laws have no operation outside of the state under whose laws they were made, while a voluntary assignment is a personal, common-law right, possessed by every owner of property, and may operate in one state as well as another. Walters v. Whitlock, 9 Fla. 86 [76 Am. Dec. 607].

"Some conflict or contrariety of opinion may be found in the decisions in respect to what may or may not constitute a voluntary assignment under the statutes of different states; but it is unnecessary to enter upon a discussion of the cases relating to voluntary assignments, as all the authorities agree that where an assignment is made under compulsion of law, or where property is taken in invitum, the transfer will not be regarded as voluntary, nor will it be effectual beyond the jurisdiction in which it was made, when it conflicts with the interests of citizens in a foreign jurisdiction. As we have seen, a court cannot extend its jurisdiction by the appointment of a receiver. So it is equally powerless to do so by coercing an assignment of the property in controversy. An assignment is regarded merely as a matter of convenience, in aid of the jurisdiction of the court; the established doctrine being that as against nonresident creditors the assignment confers no additional or higher right to the property than the receiver had by virtue of his appointment. Iddings v. Bruen, 4 Sandf. Ch. [N. Y.] 252; High, Rec. Sec. 443.

"While it is true, as has been remarked before, the domicile of the owner, in legal contemplation, draws to it his personal estate wherever it may be, yet, as this is so only by fiction of law, the rule is not of universal application. When, by the law and policy of the state where the property is actually located, it is subject to the process of attachment or garnishment at the suit of a domestic or other creditor, the fiction yields, and the actual situs of the property determines whether or not it should be subjected to the process of the court. Warner v. Jaffray, supra; Green v. Van Buskirk, supra. In cases of attachment and garnishment, like those for founding administration, the situs of a debt is the residence of the debtor. Wyman v. Halstead, 109 U. S. 654, 3 Sup. Ct. 417 [27 L. Ed. 1068]; Owen v. Miller, 10 Ohio St. 136 [75 Am. Dec. 502]."

I cannot see how the fact that the receiver assignee took possession prior to the attachment can alter the case.

"The true principle is that the assignees in an assignment in invitum are on no other or better footing than the bankrupt himself in regard to property or assets in other jurisdictions. They take subject to every equity and subject to the remedies provided by the laws of the foreign jurisdiction, and when permitted to sue therein it is not as assignees having an interest but as representatives of the assignor." 2 R. C. L. § 42, p. 688, and cases cited.

Nor can I believe that the fact that the attorney for McDonald was informed that the company intended to convey to the receiver, and expressed no dissent, at all affects Mr. McDon-

ald's rights. There is no evidence that the making of the assignment was at all induced by anything done or omitted by McDonald or his attorney. Neither McDonald nor his attorney assented to the proposed assignment. There was no call upon either to speak. They were dealing at arm's length with the corporation and all its creditors who were not as favorably situated as McDonald was. As well or better might it be contended that McDonald ratified and consented to be bound by the foreign receivership, because his attorney had knowledge of it as a fait accompli, as to contend that McDonald assented to the foreign assignment to be made in futuro, because his attorney learned that it was the design of his adversary to make such assignment. Is one to be penalized, by being made to forego an existing superiority of position, simply because a knowledge of the plans of his adversary has been thrust upon him or his attorney by his adversary's attorney? To ask the question is to answer it. The knowledge of this proposed assignment has conferred no benefit on McDonald which he would not have otherwise had, nor has it in any way contributed to cause the disadvantage which the corporation or other creditors were under (by reason of their location and circumstances) to be at all increased.

There is no evidence that when the assignment was finally made, either McDonald or his attorney had any knowledge, either actual or constructive, of the fact that it had been made. The assignment of the property in question was not placed on record in Alaska, although the assignment of the real estate was recorded on October 30, 1914, in the proper district. The assignment was made at Seattle on the 26th of October, 1914, and the attachment was in Alaska in January, 1915. Surely McDonald did not wait an unreasonable time before asserting his rights. Laches will not be attributed to him for only two or three months' delay. It is not shown that he has at all participated in or accepted any benefits from the receivership or the assignment, or in any way misled his adversaries to the latter's disadvantage.

The findings and judgment will have to be for the defendant.